Ruby **ALTERGOTT**, a minor, by and through her father and next best friend, Reuben Altergott, and Reuben Altergott, individually, Appellants (Plaintiffs below),

v.

Leah Bath **STORY**, Appellee (Defendant below).

No. 3168.

Supreme Court of Wyoming.
Jan. 15, 1964.

Ross & Buge and Vincent A. Ross, Cheyenne, for appellants.

Williams, Wunnicke & Fennell, A. Joseph Williams and Brooke Wunnicke, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

This case arose by reason of injuries occasioned to an eighteen-year-old minor, Ruby Altergott, a guest in an automobile involved in a one-car accident. Her father sued the driver of the car in one cause of action as his daughter's next friend for her damage incurred by the crash and in the second cause on his own account for the expense of care and treatment of his daughter. The case was tried to a jury and at

the end of plaintiffs' evidence the court sustained defendant's motion for a directed verdict. The purported basis of the motion was plaintiffs' failure to make out a prima facie case showing defendant's gross negligence or wilful and wanton misconduct within the provisions of § 31–233, W.S. 1957, the so-called "guest statute."

Plaintiff has appealed, arguing that whether or not there was gross negligence or wilful and wanton misconduct is usually a question of fact and that here sufficient evidence had been adduced to require the case to be submitted to the jury.

There was no conflict in the evidence, and although plaintiffs alleged wilful and wanton misconduct, they did not attempt to prove it so that the cause turns upon the question of plaintiffs' having sustained their burden of proof in showing that defendant was guilty of gross negligence within the meaning of the statute.

The record discloses that the accident occurred about 8:45 p.m. on January 16, 1961, on U. S. Highway 30, westerly of the Lincoln Monument and approximately nine miles east of Laramie. The highway patrolman testified concerning the finding of the car, a Corvair, its occupants, and the inspection and measurement of tracks, introducing a diagram to assist in his explanation. According to his testimony, as the westbound car approached a curve in the roadway:

" * * * it swerved to the left for a distance of 195 feet, crossed the center line, at the widest point of its skid it was seven feet beyond the center line of the four lane highway, then veered to the right for a distance of 231 feet still leaving black skid marks on the roadway. The brakes were then applied near the right-hand shoulder of the road and tire marks burned rubber on the black top, in the surface of the roadway four feet. The vehicle went over the embankment for a distance of 48 feet where it overturned the first time. There were deep indentations in the ground. There was debris and so forth where the vehicle had struck the first time on its first turnover. It traveled 40 feet through the air and overturned again. Here again we had deep gouges in the surface of the ground. There was more debris * *. The vehicle then overturned again, made a half turn 38 feet further on where it came to rest on its left side facing slightly back towards the roadway. It was a distance of 98 feet from the shoulder of the roadway where it came to rest."

The patrolman said that on the following day he visited defendant at the hospital and asked her how the accident happened and that she said she did not know. He asked her how much sleep she had had the night before and she said she had not gone to bed until quite late. She told him that she had been tired at the time of the accident but did not use the word "sleepy."

From evidence of other witnesses, it appeared that sometime in the late afternoon of Monday, January 16, Bill Finney, Bob Kosmicki, plaintiff Ruby Altergott, defendant, and Diane Washington, all students at the University, had gone from Laramie to Cheyenne in Kosmicki's car for the purpose of taking Diane home. Both boys had been drinking when they left, Bill having had some trouble walking. Bob, who was driving the car, ran off the road in one place. Some fifteen miles out of Laramie, they stopped at a place called the Hut and bought a six-pack of beer, one bottle of which Leah drank on the way to Cheyenne. Bill had a bottle of gin and was drinking that and beer. After the group left Diane in Cheyenne, Leah took over the driving back to Laramie. The road was dry and clear, and there was little traffic. According to Leah's testimony, she was not tired and was driving between 55 and 60 miles per hour. She did not remember when she had last noted her speed but ordinarily checked it regularly when she was driving. She recalled leaving the divided part of the highway and approaching the summit but nothing thereafter. She did not remember

the accident at all. She said she could have been asleep at the time. She was questioned concerning a trip to Cheyenne the previous night and consequently having had little sleep. She insisted on the stand that she had gone to bed around midnight Sunday night.

Asked about Leah's activities on Sunday night, Diane said that she had been with Leah at eleven o'clock but did not remember how long she remained in the room with her. She was confronted with a contrary statement that she had purportedly made, but counsel was not allowed to impeach her with it or introduce it in evidence.

Numerous persons testified that Leah had told them while she was in the hospital that she had been asleep at the time of the accident and at one time had looked in the mirror at herself and said, " 'Old girl, you picked a fine time to go to sleep.' "

█ The circumstances leading up to the wreck were thus portrayed rather clearly with no seeming contradiction but with a paucity of information as to the occurrences immediately preceding the crash. Both litigants rely upon a principle announced in McClure v. Latta, Wyo., 348 P.2d 1057, 1062, that gross negligence is generally a question of fact for the jury or for the trial court sitting without a jury, and it becomes a question of law only when it is clear that but one conclusion can be drawn—if reasonable minds might draw different conclusions from the evidence, the question is for the jury. The correctness of the pronouncement cannot be challenged, and the question here is one of application of the facts to the rule. Plaintiffs assume that reasonable minds could differ regarding the circumstances leading up to the crash, and in so doing avoid specifying any one act as being grossly negligent, alluding instead to all of the happenings taken together.

█ In the light of this argument, it becomes desirable to review and evaluate the evidence which was presented. There was no specific testimony concerning speed,

defendant merely saying that she was driving between 55 and 60, that she had not seen the speedometer immediately before the wreck but was accustomed to check the speed and had done so on that trip. She said she had seen 65-mile-per-hour signs in different places along the highway. The patrolman was not asked concerning speed. One witness said the accident happened on a spiral curve, but the pictures and map indicate that the curve was S-shaped and not sharp. There was no testimony as to the grade of the road. There was, of course, testimony concerning the tracks and the overturning of the car, but a conclusion as to the speed of the accident-car from such physical facts alone would be so unreliable as not to present a genuine issue of material fact requiring submission to a jury. See Macy v. Billings, 74 Wyo. 404, 289 P.2d 422, 424. The mere fact of falling asleep while driving does not constitute gross negligence within the meaning of the statute. Cooper v. Kellogg, 2 Cal.2d 504, 42 P.2d 59; Bryan v. Bryan, Fla., 59 So.2d 513; 4 (Part 1) Blashfield, Cyclopedia of Automobile Law and Practice, p. 470 (1946); Annotation, 28 A.L.R. 2d 12, 60. Plaintiffs argue that Leah had been up late the night before the accident. She testified that she had gone to bed around midnight, and there was no competent evidence offered to show that she had not had a proper amount of sleep. In the McClure case at 348 P.2d 1061–1062, we cited Arnold v. Jennings, 75 Wyo. 463, 296 P.2d 989, and Hawkins v. L. C. Jones Trucking Co., 68 Wyo. 275, 232 P.2d 1014, as having established with some certainty the definition of gross negligence in this jurisdiction as "indifference to present legal duty and utter forgetfulness of legal obligations." No evidence disclosed in the record places the circumstances of the present case within this definition. As we view it, reasonable minds could not here have drawn different conclusions from the evidence, and the trial court was correct in directing a verdict for defendant.

Affirmed.