Lance and David SANDERS, minors, by their
next friend, Marie Wolf, Appellants
(Plaintiffs below),

v.

Michael Dale PITNER, a minor, by his father,
Robert Pitner, Guardian ad litem, Ap-
pellee (Defendant below).

No. 4159.

Supreme Court of Wyoming.

April 3, 1973.

Edward L. Grant, Osborn & Grant, Cheyenne, John Perrott, Berthoud, Colo., for appellants.

Paul B. Godfrey, Cheyenne, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Plaintiffs in this case, appellants here, filed a suit against defendant, appellee here, for injuries sustained in an accident which occurred approximately 23 miles north of Cheyenne on U.S. Highway 85. After a jury trial, wherein a verdict in favor of defendant was returned and judgment entered thereon, appellants filed this appeal.

A short factual statement of the case resolving all conflicts in favor of appellee and most favorable to him as is required by our rules will be hereinafter set out. There is a conflict in the testimony in some areas.

On the morning of October 8, 1970, Lance and David Sanders, appellants, left Ft. Collins, Colorado, with Michael Dale Pitner, appellee, in his automobile, which he was driving to Newcastle, Wyoming, for the purpose of hunting and visiting. None of the boys had parental approval. Lance was 17 years old, David was 14, and Michael 16 at the time of the accident.

The road and weather conditions were good in Ft. Collins and continued substantially the same way until a point north of Cheyenne at the intersection of Interstate Highway 25 and the Torrington cutoff (U.S. 85), at which point they began encountering blowing and drifting snow, which because of the temperature was melting and becoming slushy in places. The southbound lane of the highway was more heavily covered with snow and slush than the northbound lane. There were patches of snow and slush at intermittent intervals in the northbound lane. Lance was riding in the front seat and David in the back. Michael drove at the rate of 60 to 65 miles per hour and slowed for the slushy spots. David suggested once that he slow down. Lance never told him he was driving too fast or asked him to slow down. (There is a conflict in this testimony, Michael denying it.) The testimony of Lance as to these warnings is somewhat equivocal.

Approximately 23 miles north from Cheyenne the car collided head-on with a car approaching them from the north. Michael's car came up over a hill and at that point hit snow or slush. He let up on the accelerator as the car skidded into the other lane (southbound) where it collided with an oncoming car. Defendant describes it as like "a big hand had took us and pushed us right into the other lane." Lance yelled at him to get back into the right lane, which he tried to do. The car initially failed to respond and he was unable to get it back into the northbound lane although at the time of the collision it had started to turn back. The boys had passed a snowplow some miles south of the accident, and although the car fishtailed Michael did not lose control at that time. Although David had made some warning of the road condition, there is no suggestion that either of the brothers asked to get out or suggested that Lance drive. Lance had styled Michael as a pretty decent driver and as a good driver, and both plaintiffs had ridden with him before. The tires on the car were in excellent condition, there being new snow tires on the rear and the front tires being in good shape. There is some testimony by Darrol Cameron, who was then a patrolman, as to the condition of the road, which does not agree with the above. He said in his testimony he was forced to drive between 30 and 35 miles per hour a large part of the way after he reached Highway 85, slowing up as he came to slushy places. He was apparently approximately 25 miles from the scene of the accident when he received the call concerning it and arrived at the scene in 21 minutes, after driving the first nine miles at 100 miles per hour. The jury may well have made some computation as to the probable average speed he drove the last 16 miles and found the same not much different than defendant's speed.

Appellants submit three propositions to the court on their appeal. They are briefly stated as follows:

That since plaintiffs were guests they assumed the burden of showing gross

negligence or willful and wanton misconduct, and that the court committed error in instructing on contributory negligence and assumption of risk since these are defenses only to ordinary negligence.

That the court erred when it did not take the issues of contributory negligence and assumption of risk from the jury and instructing thereon since there is no evidence of these elements, and that this was strongly prejudicial.

That since plaintiffs had the burden of proving gross negligence or willful and wanton misconduct it was error for the court to refuse plaintiffs' offer of instruction relating to the standard of care to be used in determining gross negligence of an inexperienced minor driver.

■ Appellants pursue an argument that the words "gross negligence or wilful and wanton mis-conduct" in § 31–233, W.S.1957, C.1967, contemplate a single category of conduct which is contrasted with ordinary negligence, but connote no separate categories within the phrase itself. We cannot reach this question in light of the record. Both the complaint and amended complaint allege operation in a "grossly negligent manner" and that the injuries were suffered "as a direct and proximate result of gross negligence." The pretrial memorandum filed by appellants poses a question of law, "whether defendant was grossly negligent." The pretrial order sets out gross negligence as an issue without mention of willful and wanton conduct. In addition, and decisively, the court, after including in full the guest statute in an instruction, in the following instruction defined "gross negligence" and included therein this statement:

"It is, however, something less than willful and wanton conduct defined as conduct which is or ought to have a tendency to injure."

This instruction, being given without objection, became the law of the case, Joly v. Safeway Stores, Inc., Wyo., 502 P.2d 362, 365, and cases cited therein.[1] Appellants cannot now fairly assert that these terms are synonymous and avoid instructions on contributory negligence or assumption of risk.

■ Insofar as the first contention is concerned this issue is confined to a determination of whether it be proper to instruct on contributory negligence and assumption of risk in a case wherein "gross negligence" is the claimed basis for recovery. Appellants strongly rely on Williams v. Carr, 68 Cal.2d 579, 68 Cal.Rptr. 305, 440 P.2d 505, which is inapplicable because of a different guest statute which limits recovery to those accidents resulting from intoxication or willful misconduct, 66A West's Annotated California Codes, § 17158, p. 168 (1971). The holding in the Williams case is based upon a rule that contributory negligence is no defense to a claim of willful misconduct and therefore is no authority for the proposition urged in this case. Prosser, Law of Torts, ch. 11, p. 426 (4th Ed.), states the rule as follows:

"* * * Thus if the defendant's negligence is merely 'gross,' an extreme departure from ordinary standards, but still without elements of 'wilfulness' or 'wantonness,' it is generally held that the plaintiff's ordinary negligence is a defense. * * *"

See also Henley v. Carter, Fla., 63 So.2d 192, 44 A.L.R.2d 1339; Parrott v. Garcia, Tex., 436 S.W.2d 897, 901; Myers v. Myers, 151 Colo. 8, 375 P.2d 525, 527; Landrum v. Roddy, 143 Neb. 934, 12 N.W. 2d 82, 87, 149 A.L.R. 1041. In Cross v. Foster, Wyo., 378 P.2d 903, 904, we recognized the doctrine of assumption of risk in a guest case based on a claim of gross negligence. We have not heretofore distin-

---

1. In Mitchell v. Walters, 55 Wyo. 317, 100 P.2d 102, 108, it was suggested that the act would not have been phrased in the disjunctive if "gross negligence" and "wilful and wanton mis-conduct" were intended to mean the same. In Krahn v. LaMeres, Wyo., 483 P.2d 522, 525, the difference was discussed. See also Moore v. Kondziela, Wyo., 405 P.2d 788, 789–790.

guished between contributory negligence and assumption of risk, Ford Motor Company v. Arguello, Wyo., 382 P.2d 886, 891; Rocky Mountain Trucking Company v. Taylor, 79 Wyo. 461, 335 P.2d 448, 451. We see no reason at this time or in this matter to re-explore this area and to determine if these defenses should be distinguished. This may become necessary when the recently enacted statute affecting the defense of contributory negligence (H.E.A. 16, 42nd Session, Wyoming State Legislature, which will be § 1–7.2, W.S.1957, 1973 Cum.Supp.) becomes effective. We conclude, then, it was not error to give such instructions as a matter of law.

■ In consideration of appellants' second proposition, if an instruction on either contributory negligence or assumption of risk was proper we must affirm this judgment. Based upon the case of Cross v. Foster, supra, failure of the plaintiffs or either of them to suggest the abandonment of the venture, to suggest that they be returned to Cheyenne or allowed to get out, or that the car be stopped, and the failure of Lance to volunteer to drive the car, particularly in light of his statement that he did not believe defendant realized the condition of the road, was evidence sufficient to submit the question of assumption of risk. It was held not to be error, in light of the Wyoming decisions, to instruct on the assumption of risk over objection if the instruction properly covered contributory negligence and assumption of risk, Askin v. Dalgarno, 10 Cir., 293 F.2d 424, 426. Here no question is raised that the instructions do not properly cover the law. The case of Centrello v. Basky, 164 Ohio St. 41, 128 N.E.2d 80, 86, is particularly persuasive. In that case the court instructed on contributory negligence and assumption of risk. There was no contention that it was improper to instruct on contributory negligence. The court there held that even though it be error in the absence of special interrogatories to indicate the issue upon which the general verdict was entered, there was a presumption that all issues were resolved in favor of the prevailing party; and that where one determinative issue had been properly presented error in presenting another one would be disregarded. We have adhered to the rule that a general verdict imports a holding on all issues favorable to the prevailing party, Colwell v. Anderson, Wyo., 438 P.2d 448, 452, and cases cited therein, Helms v. Chaney, Wyo., 418 P.2d 1000, 1001.

We have examined this record, and although it is not our province to review the evidence it is our view that it is entirely possible that the verdict of the jury was based upon the failure to find the existence of gross negligence. The record is far from overwhelming in proof of this element.

■ Appellants filed with and as a part of their brief an instrument entitled "Correction of Omission in Record" and attached thereto an instruction which they state was offered and refused but which was inadvertently omitted from this record. This instruction bears the word "Refused" and the signature of the judge. It was not included in the record, however, and apparently stayed in the files of appellants' attorneys. The record shows an objection to the court's refusal to give a proffered instruction pertaining to the standard of care of a minor driver. In reliance upon Rule 11, Rules of the Supreme Court of Wyoming, appellants contend this should be made a part of the record. Appellee refuses to stipulate this and suggests from memory that the instruction may have been withdrawn. This obviously creates a conflict of facts which should not be resolved in this court but in the trial court where the matter arose. Appellee further raises the question that the instruction was not properly certified. Appellants suggest that if this is not properly in the record under Rule 11 that they should be allowed to proceed under Rule 75(d), W.R.C.P. We see no reason why a party could not have proceeded under either rule. However, in this case we see no difference in application. Rule 11 provides for a "certi-

fied copy" of parts of the record alleged to have been omitted and grants to the party an opportunity, after an order, for certification by the proper clerk, which in all cases would be the clerk of the court in which the case was tried. Under Rule 75(d), in the absence of a stipulation, in the first instance it must be submitted to and settled by the district court, or it can be submitted to this court with the further provision that the court may on its own initiative direct that the omission be corrected. However, in the absence of a stipulation, this raises a question of fact for determination by the trial court and should not be an occasion for a trial of the facts in this court. There is no certification nor any order in this record. This instruction is not properly before us nor is it the subject of review in the absence of a certificate, Northwestern Terra Cotta Co. v. Smith-Turner Hotel Co., 47 Wyo. 190, 33 P.2d 915, 916, and cases cited therein.

■ Even if we were to assume it was properly before us, an examination of the proffered instruction discloses no prejudicial error. It contains a short statement that the minor defendant was held to the same standard of care as an adult. An examination of the instructions as a whole reveals that in defining negligence the court employed the usual words "ordinarily prudent person" and repeated the phrase "reasonably prudent person." The instructions also contain the statutory wording "no person" but no distinctions are mentioned of a less strict standard for the minor defendant. The instruction in framing the issues contains no suggestion of a claim on the part of defendant of a diminished responsibility because of his minority, nor do we find in the pleadings anywhere that this is relied upon as a defense. It is to be further observed the instruction proffered only applies to the minor defendant. Had the question of reduced standard of care been submitted it would appear applicable to the other parties. Giving this instruction without further explanation

would have been confusing to the jury and would have overemphasized his minority to the prejudice of the defendant.

Attorneys generally in the preparation and offer of instructions should read the statement in Stringer v. Board of County Commissioners of Big Horn County, Wyo., 347 P.2d 197, 201, as follows:

" * * * The duty for instructing the jury is primarily with the court, but from the right of a litigant to ask for special instructions has grown up the custom by which each counsel will submit all of the instructions which seem to him to be desirable to his cause. *The result tends to be the promulgation of an uncoordinated series of statements which often lose sight of the true governing factors in the litigation.* * * *" (Emphasis supplied.)

Stated in another way, sight is often lost of the fact that instructions are to clarify the issues and assist the jury in understanding the case, not to confuse them.

The judgment is therefore affirmed.

McINTYRE, Justice (concurring).

I have been unable to put my finger on any evidence in this case which would justify the giving of an instruction on contributory negligence. Nevertheless, I concur in the result reached because it seems to me a prima facie case of *gross* negligence was not made out against the defendant.

We have established with some certainty the definition of gross negligence in this jurisdiction as "indifference to present legal duty and utter forgetfulness of legal obligations." See Altergott v. Story, Wyo., 388 P.2d 196, 198.

Hence, in the *Altergott* case we said the mere fact of falling asleep while driving does not constitute gross negligence within the meaning of the guest statute. Also, in Moore v. Kondziela, Wyo., 405 P.2d 788, 791, we said excessive speed alone does not constitute gross negligence within the meaning of the guest statute; and we indi-

cated it would be necessary to show how speed could constitute gross negligence without it and surrounding circumstances making it appear probable an accident would result.

No doubt there was evidence of negligence in the case at hand. There was, however, no indication that speed was so excessive as to make it appear probable an accident would result; and there was nothing in the evidence to indicate an indifference to present legal duty or utter forgetfulness of legal obligations on the part of the driver. Under these circumstances, reasonable minds could not have drawn different conclusions from the evidence and there was no prima facie showing of *gross* negligence.