Donald BURTON, Appellant (Plaintiff),

v.

FISHER CONTROLS COMPANY, a corporation; Olman-Heath, a corporation; A.J. Deans; and G. Wayne Pierce, dba Pierce Construction Company, Appellees (Defendants).

No. 84–43.

Supreme Court of Wyoming.

Jan. 17, 1986.

Rehearing Granted Feb. 25, 1986.

P. Richard Meyer and Wayne Godare of Spence, Moriarity & Schuster, Jackson, for appellant.

Glenn Parker and Thomas A. Nicholas of Hirst & Applegate, Cheyenne, for appellee Olman-Heath.

John D. Rossetti of Greenhalgh, Bussart, West & Rossetti, P.C., Rock Springs, for appellee A.J. Deans.

Before Thomas,* C.J., and ROSE,** ROONEY,*** BROWN and CARDINE, JJ.

ROSE, Justice.

Appellant-plaintiff Donald Burton (Burton) brought suit against Fisher Controls Company (Fisher), H & H Services, Inc. (H & H), Olman-Heath Company (Olman-Heath), G. Wayne Pierce, dba Pierce Construction Company (Pierce), and A.J. Deans (Deans) for damages resulting from a gas-regulator explosion. Liability against Fisher was predicated upon negligent design of the regulator; against H & H for negligence flowing from the sale and installation of the regulator; against Olman-Heath for negligent installation of the regulator and failure to install safety devices, and for negligence in turning high-pressure gas into the regulator and failing to warn Burton of these allegedly dangerous condi-

tions; against Pierce for failing to take corrective action at the well site and failing to warn Burton of the existing dangerous condition; and, finally, against co-employee Deans for gross negligence.

All defendants answered, denying liability and alleging contributory negligence on the part of Burton. H & H was granted summary judgment, and, while an appeal was being taken, Burton settled his claim with H & H and the appeal was dismissed. Prior to trial, Fisher and Pierce settled the claims against them, and therefore trial was had against Olman-Heath and Deans only.

The record reveals that, throughout the trial and in the instructions and verdict form, the court identified and referred to Fisher and Pierce as "Defendants" along with Olman-Heath and Deans, even though Fisher and Pierce had settled with the plaintiff, had been dismissed from the case, and thus were no longer parties defendant. The record discloses that, prior to trial, plaintiff requested that Fisher and Pierce not be referred to as "Defendants" to the jury. The court refused this request, and, in its introductory remarks to the jury, indicated that Fisher and Pierce, along with Olman-Heath and Deans, were defendants in the case. Furthermore, as will be seen, the trial court, in Instruction No. 20, admonished the jury that Fisher and Pierce would be liable to Burton in the event the jury found their liability to be in excess of any negligence which the jury found attributable to the plaintiff.

At the close of all of the evidence, a motion for directed verdict was granted in favor of Deans on the issue of gross negligence. The jury thereafter returned a verdict in favor of Olman-Heath and found no negligence attributable to either Fisher or Pierce.

We will reverse the trial court. This being our decision, we find it necessary to

* Became Chief Justice January 1, 1985.

** Justice Rose circulated the opinion of the Court October 3, 1985, and retired November 1, 1985.

*** Chief Justice at time of oral argument; retired November 30, 1985.

consider only the following issues as identified by the appellant:

1. "Did the trial court err in granting a directed verdict on the issue of gross negligence in favor of co-employee defendant A.J. Deans when evidence of Deans' gross negligence upon which reasonable men might differ was presented to the jury?"

2. "Was it fundamental error for the trial judge to instruct the jury that plaintiff was still making a claim against defendants with whom plaintiff had previously settled?"

## ISSUE NO. 1

### Gross Negligence and Deans' Directed Verdict

Motions for directed verdicts should be cautiously and sparingly granted. *Vassos v. Roussalis*, Wyo., 658 P.2d 1284 (1983).

In reviewing the propriety of a directed verdict, we must consider all of the evidence favorable to appellant and give it every reasonable inference which may be drawn. If the evidence, when viewed in this light, can reasonably support more than one conclusion, the directed verdict will be said to have been erroneously granted. *Town of Jackson v. Shaw*, Wyo., 569 P.2d 1246 (1977).

In *Town of Jackson*, we said:

"In reviewing the grant of a directed verdict by a trial court, consideration must be given to all evidence favorable to party against whom the motion is directed, as well as to all reasonable and legitimate inferences which might be drawn therefrom. *McCarthy v. Croker*, Wyo. 1976, 549 P.2d 323; *Barnes v. Fernandez*, Wyo. 1974, 526 P.2d 983; *Brennan v. Laramie Newspapers, Inc.*, Wyo. 1972, 493 P.2d 1044. Whether or not the evidence so viewed is sufficient to create an issue for the jury is solely a question of law to be answered by the trial court. That court must determine whether or not the evidence is such that, without weighing the credibility of the witnesses, or otherwise, considering the weight of the evidence, there is but one conclusion as to verdict which men of reason could reach. *Barnes v. Fernandez*, supra. * * * " 569 P.2d at 1250.

■ We turn, then, to this court's definitions of gross negligence and the applicable facts and inferences which are the most favorable to appellant to see whether, under the *Town of Jackson v. Shaw* guidelines, the court erred in directing the verdict in favor of Deans.

In *Mitchell v. Walters*, 55 Wyo. 317, 330, 100 P.2d 102 (1940), this court accepted the definition of gross negligence which Chief Justice Rugg of the Massachusetts Supreme Judicial Court authored in *Altman v. Aronson*, 231 Mass. 588, 121 N.E. 505, 506, 4 A.L.R. 1185 (1919), where the Chief Justice said:

" 'Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the wilful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter, even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is, or ought to be, known to have a tendency to injure. This definition does not possess the exactness of a mathematical demonstration, but it is what the law now affords.' "

We have been comfortable with this definition of gross negligence down through the years. See *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979); *Sanders v. Pitner*, Wyo., 508 P.2d 602 (1973); *Moore v. Kondziela*, Wyo., 405 P.2d 788 (1965).

Some of the relevant facts most favorable to appellant which must be tested against these concepts of gross negligence

for purposes of determining whether the court erred in directing a verdict in Deans' favor are these:

Pierce, an independent contractor for Davis Oil, testified that he considered the elevated pressures in the well to be dangerous and that he reported these pressure levels to Deans:

"Q. Mr. Pierce, didn't it bother you that the pressures in the well were as high as they were?

"A. It concerned me.

"Q. And I want you to tell the jury in your own words why it concerns you?

"A. Because as far as I was concerned it was becoming an unsafe condition.

"Q. You thought it was dangerous?

"A. I thought it was dangerous.

"Q. And for that reason did you have anything that you did with your employees; in other words, did you permit your employees to go to that well or did you go there yourself?

"A. I did it myself.

"Q. And what was the reason you did it yourself instead of sending your employees?

"A. They were scared of it, they were scared of the high pressure, so I just took it on myself to do it myself. I wouldn't ask them to do something that I wouldn't do.

"Q. And when you found out about this pressure, did you do anything to notify the Davis Company?

"A. Yes.

"Q. What did you do?

"A. I phoned in the pressures to A.J. Deans every morning.

"Q. Every morning?

"A. Reporting the increase in pressures.

"Q. To Mr. Deans?

"A. Yes."

On the morning of the explosion, Pierce told Deans that he would no longer relieve pressures in the well:

"Q. Did you tell Mr. Deans that you weren't going to blow the well down anymore, that you didn't want to be there anymore?

"A. I said that I would blow it down today, but that would be my last time.

"Q. Did you tell him—why was that? Why did you say that?

"A. I guess I'm a coward."

Deans denied receiving the reports of increasing pressures in the well from Pierce, but testified that accounts of dangerously high pressures would have triggered an immediate response on his part:

"Q. [By Mr. Meyer] If Mr. Pierce had called you and said the things to you that he said he said about the pressures in the well, wouldn't you have had a responsibility to take some immediate action?

"A. I believe so, yes, sir.

"Q. And it would have been completely improper under the circumstances not for you to have done something; isn't that right?

"A. If I thought it was getting dangerous, yes, sir, we would do something.

"Q. And if you didn't it would have been completely improper on your part; isn't that right?

"A. I think most anybody, yes, sir.

"Q. And you kind of—the action you would have taken would have been to go out and immediately make the well safe; isn't that right?

"A. You'd—you'd appraise the situation and figure a course of action, yes, sir.

"Q. But you did nothing at all?

"A. We didn't consider it dangerous, sir."

Given the testimony of Deans and Pierce and all other favorable evidence of record, together with all reasonable inferences to be drawn therefrom, we hold that the evidence would be sufficient to support a finding of gross negligence—had that been the decision of the fact finder. Deans knew of the increasing pressures in the well and knew or should have known of the danger, and he neither took corrective measures nor warned workers of the unsafe conditions. These facts are adequate for purposes of structuring an issue for the jury

and sufficient to remove the question as being one of law for the court. The trial court therefore erred when it directed the verdict in favor of Deans on the issue of his gross negligence.

## ISSUE NO. 2

*Was It Error for the Trial Court To Treat Fisher and Pierce with Whom The Plaintiff Had Settled As Remaining in the Case As "Defendants"?*

Burton contends that the trial court committed reversible error in informing the jury that Fisher and Pierce remained in the case as "Defendants" with potential liability to the plaintiff, even though they had settled the claims against them and had been dismissed prior to trial.

Specifically, appellant attributes error to the trial court's reference to Fisher and Pierce as "Defendants" in Instruction No. 2. That instruction provides in part:

## "INSTRUCTION NO. *2*

"Donald Burton, plaintiff herein, claims damages for injuries he claims he sustained as the result of an accident which occurred on March 8, 1977. Burton will hereinafter be called 'Burton' or 'Plaintiff', *and Fisher Controls Company*, a corporation, Olman-Heath, a corporation, A.J. Deans *and G. Wayne Pierce, dba Pierce Construction Company will hereinafter be called 'Fisher'*, 'Olman', 'Deans' and *'Pierce'* individually, or collectively for convenience, as *'Defendants'.*

**1.** The contentious verdict form follows:

"WE, the Jury, duly empaneled and sworn to try the above cause, do find as follows: (In answering the questions, check the appropriate line, or insert a percentage or amount, as indicated.)

"1. Q. Were any of the following <u>Defendants</u> negligent?

| "A. | Fisher Controls Company | Yes ___ | No _X_ |
|---|---|---|---|
| | Olman-Heath | Yes ___ | No _X_ |
| | A.J. Deans | Yes ___ | No _X_ |
| | G. Wayne Pierce | Yes ___ | No _X_ |

"If your answer to Question 1 is 'Yes' as to any <u>Defendant</u>, except as hereinafter instructed in this paragraph, you will answer Question 2. However, if your answer is 'No' as to all <u>Defendants</u>, or 'No' as to all <u>Defendants</u> except Deans, and is

"It has been claimed that all of the above were guilty of negligence, and that such negligence, sometimes hereinafter called 'fault', was either wholly or partially, a direct cause of the accident and of any injuries and damages sustained by Burton." (Emphasis added.)

Burton also complains of Instruction No. 20 which informed the jury that any "Defendant" (which, under Instruction No. 2, included Fisher and Pierce) whose fault exceeded that of the plaintiff would be liable in damages. This instruction reads as follows:

## "INSTRUCTION NO. *20*

\* \* \* \* \* \*

"If you find that Burton, and *any of the Defendants* were at fault, and that Burton's degree of fault was equal to or greater than the fault of any Defendant, then that Defendant will not be liable to Burton. However, *if you find that the degree of fault of any Defendant was greater than Burton's degree of fault, then that Defendant will be liable to Burton.*" (Emphasis added.)

For purposes of this discussion, Instruction No. 20, when read with Instruction No. 2, says that if the jury is able to find the negligence of Pierce and/or Fisher to be greater than the negligence of Burton, then Pierce and/or Fisher would be liable to Burton.

Appellant also contests the verdict form—not because Pierce and Fisher were included in the list of participants, but because they are designated as "Defendants."[1]

'Yes' as to Deans you will proceed no further, sign the Verdict and return to Court.

"2. Q. Was the negligence of any <u>Defendant</u> as to whom you have answered 'Yes' in Question 1 a direct cause, either wholly or partially, of the accident and any injuries and damages sustained by Burton?

| "A. | Fisher Controls Company | Yes ___ | No ___ |
|---|---|---|---|
| | Olman-Heath | Yes ___ | No ___ |
| | A.J. Deans | Yes ___ | No ___ |
| | G. Wayne Pierce | Yes ___ | No ___ |

"If your answer to Question 2 is 'Yes' as to any <u>Defendant</u> except as hereinafter instructed in this paragraph, you will answer Question 3. However, if your answer is 'No' as to all Defendants, or 'No' as to all <u>Defendants</u> except Deans, and is 'Yes' as to Deans, you will proceed no further, sign the Verdict and return to Court.

Appellant points out in his brief that these references to Fisher and Pierce as "Defendants" in the instructions and the verdict form misinformed and misled the jury as to those who were properly before the court for the purpose of ascertaining liability to the plaintiff, and further argues that the jury was thereby invited to speculate as to the status of Fisher and Pierce and Burton's reasons for producing no evidence against them. In his brief, the appellant contends:

> "The instructions, as given, falsely informed the jury that Fisher and Pierce were defendants and that plaintiff was making claim against them. Since the issues with Fisher and Pierce had been settled prior to trial, neither of them appeared through counsel or offered any evidence. Nor did plaintiff produce any evidence since to do so would only have diminished plaintiff's claims against the remaining defendants at trial. This left the plaintiff in the unenviable and prejudicial position of appearing to be making claims against Fisher and Pierce, but being unable or unwilling to produce any evidence against them. * * * What must the jury have believed? That plaintiff had sued Fisher and that they were a defendant in this case but that plaintiff was unwilling to present evidence against them? Such a situation could only invite the jury to speculate as to *non-existent circumstances.* The credibility of plaintiff's entire case was totally compromised. * * * "

Of even greater importance is the fact that the submitted instructions and jury verdict repeatedly treat Fisher and Pierce as parties defendant who were having their negligence compared for liability purposes, and therefore the jury directions contained erroneous and misleading information as to the consequences of the jury's verdict.

### The Effect of Misinforming the Jury Of the Consequences of Its Verdict

Through Instruction No. 20, supra, the jury was told that "any Defendant" (which would include Fisher and Pierce since they were identified as "Defendants" in Instruction No. 2, and as "parties" in the verdict form) would be liable to Burton in damages if their degree or degrees of fault exceeded Burton's degree of fault. By failing to distinguish between those actors who remained in the litigation as parties for the purpose of ascertaining liability (if any) and those who had been dismissed and were

"3. Q. Was Donald Burton negligent?

"A. Donald Burton Yes ___ No ___

"If your answer to Question 3 is 'Yes', you will answer Question 4. If your answer is 'No', you will not answer Question 4, but will answer Question 5.

"4. Q. Was the negligence of Donald Burton a direct cause, either wholly or partially, of the accident and of any injuries and damages sustained by him?

"A. Donald Burton Yes ___ No ___

"5. Q. If you have answered 'Yes' to either or both of Questions 2 and 4, you have found that the parties as to whom you have answered 'Yes' were at fault. Therefore, considering that all of such fault combined equals 100%, you will show the percentage by which such fault was a direct cause of the accident opposite that party's name. You will weigh the fault, if any, of each party against that of the other parties, and determine the relative fault, if any, in relation to the fault of the other party or parties. What part of the 100% do you find attributable to each of the following? (If you have answered 'No' as to any party in either or both of Questions 2 and 4 in which that party's name appears, you will write in '0'.

"A. Fisher Controls Company _____ %
 Olman-Heath _____ %
 A.J. Deans _____ %

 G. Wayne Pierce _____ %
 Donald Burton _____ %
 100%

"[In Interrogatory No. 5, the nouns 'party' and 'parties' are misused and result in confusion and erroneous information insofar as they pertain to Fisher and Pierce. This is emphatically so when read with Instruction No. 2 and Instruction No. 20, supra, because the unmistakable message which is conveyed by Interrogatory No. 5 is that Fisher and Pierce are still in the case as 'parties' who, together with Olman-Heath and A.J. Deans, were having their negligence compared for purposes of ascertaining their liability or lack of it.]

"Regardless of your answer to Question 5, you will answer Question 6.

"6. Q. What sum of money would fairly compensate Plaintiff for any injuries and damages sustained by him as a direct result of the accident? You will determine this figure, if any, regardless of the percentages, if any, if you have had to compute the percentages. If you find no damage, you will write in '0'.

"A. Donald Burton Actual Damages
 $ _____

 "[Signed] David D. Peake
 Foreman/Forewoman"

(Emphasis added.)

required to be included upon the jury form for comparative-negligence and contribution purposes only, the court incorrectly instructed the jury that its verdict could result in liability for participants who had settled with the plaintiff prior to trial. This, of course, is not the law.

*The Law Pertaining to the Proposition That Settling Tortfeasors May Never Remain Liable To the Plaintiff, or, for That Matter, To Any Actor Including the Remaining Defendants*

*Comparative Negligence*

 While settling actors cannot be designated in the instructions or verdict form as "defendants" or "parties," it is readily conceded that, under our comparative-negligence statute, § 1–1–109, W.S. 1977,[2] it is imperative for the court to include settling causative participants, such as Fisher and Pierce, on the jury form.[3] This is so because, in a comparative-negligence case where relative fault is in issue, the jury must not only consider causative negligence of the parties to the litigation, but it must also ascertain the percentage of fault for all of the participants in the tortious conduct which causes injury. *Kirby Building Systems v. Mineral Explorations Company*, Wyo., 704 P.2d 1266 (1985); *Board of County commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174 (1981). This identification of each actor's share of the total causative fault is necessary to a valid comparison between the plaintiff's negligence and the negligence of each defendant. *Kirby Building Systems v. Mineral Explorations Company*, supra; *Board of County Commissioners of County of Campbell v. Ridenour*, supra. Accord *Palmeno v. Cashen*, Wyo., 627 P.2d 163 (1981). Under § 1–1–109(a), supra note 2, the plaintiff can recover only from those defendants whose negligence exceeds his own, and for that calculation to be made, 100 per cent of the causative fault must be included in the formula.

In *Kirby Building Systems*, we summed up these comparative-negligence concepts having to do with the necessity of and reasons for including nonparty actors on the verdict form, and we went on to explain that, even though it was necessary to include nonparty actors on the verdict form, the nonparty was not bound by the degree of fault fixed by the jury, and the nonparty actor's negligence is not to be compared with the negligence of a party. That rule is diametrically opposed to Instruction No. 20 given by the trial court in this case.

In *Kirby Building Systems*, supra, 704 P.2d at 1272–1273, we said:

*"Even though the nonparty actors' percentage of negligence must be ascertained so that the parties' percentage of negligence may be accurately disclosed, the nonparty actor is, of course, not bound by the degree of fault fixed by the jury, Board of County Commissioners of Campbell County v. Ridenour, supra, nor does the nonparty actor have any direct influence upon any*

2. Section 1–1–109, W.S.1977, provides:
 "(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.
 "(b) The court may, and when requested by any party shall:
 "(i) If a jury trial, direct the jury to find separate special verdicts;
 "(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;
 "(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

3. At least this is so when requested by any remaining litigant. In *State v. Dieringer*, Wyo., 708 P.2d 1 (1985), we held that litigants are free to structure their own lawsuits and that it is not reversible error not to include actors in the verdict form where no demand has been made for such actors' inclusion.

*party's ability to recover in the action. The nonparty actor's negligence is not compared with the negligence of the party, because recovery is not sought from a nonparty. The nonparty actor does, however, influence the comparison process in the sense that his fault is contemplated along with the fault of the parties for purposes of determining whether the plaintiff may recover from a defendant or from defendants for the injury for which recovery is sought. Board of County Commissioners of Campbell County v. Ridenour, supra. Logic dictates that, if the negligence of an actor who is not a party is not included in the comparative-negligence calculation, the percentage of negligence of defendants who are parties may be inflated, and this would have a detrimental impact upon the comparison of the fault of the plaintiff and the several defendants in reaching a determination as to liability of some or all of the defendants to the plaintiff."* (Emphasis added.)

For purposes of resolving the comparative-negligence question in the case at bar, these lessons from *Ridenour* and *Kirby Building Systems* teach that Fisher and Pierce must indeed appear upon the verdict form "so that the parties' percentage of negligence may be accurately disclosed," *Kirby Building Systems,* supra, 704 P.2d at 1272, but, contrary to the trial court's

instruction here, "the nonparty actor's negligence is not compared with the negligence of a party because recovery is not sought from a nonparty." Id.

### Necessity for All Actors To Be on the Verdict Form For Contribution Purposes

### Contribution Among Joint Tortfeasors

 While it was error for the trial court to refer to settling participants Fisher and Pierce as "parties" and "defendants," it was nonetheless necessary that they appear on the verdict form—not only to establish an accurate reading of the totality of the causative negligence for comparative-negligence purposes, but also because their inclusion upon the verdict could have been important for contribution-among-joint-tortfeasors requirements.[4] We said in *Kirby Building Systems,* supra, 704 P.2d at 1275–1276:

"In pursuit of the policy described by the legislature, settlements are made attractive in that a nonsettling tortfeasor may not collect contribution from a fault-contributing actor who has settled with the plaintiff,[5] but, if the settlement extinguishes the liability of other tortfeasors, the settler retains a right of contribution from nonsettling tortfeasors.[6] A plaintiff who settles with a tortfeasor will not be permitted to recover an amount which is in excess of his verdict, and, thus, his verdict will be reduced by the amount

---

**4.** Section 1–1–111, W.S.1977, is concerned with contribution among joint tortfeasors:

"(a) In determining the pro rata shares of tortfeasors in the entire liability:

"(i) The relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law;

"(ii) If equity requires, the collective liability of some as a group shall constitute a single share;

"(iii) A final verdict in favor of an alleged joint tortfeasor as against the injured party shall be a conclusive determination that such successful party is not liable to make contribution to any other tortfeasor."

**5.** Section 1–1–113(a)(ii), W.S.1977, provides:

"(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

\* \* \* \* \* \*

"(ii) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

**6.** Section 1–1–110(d), W.S.1977, provides:

"A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable."

stipulated in the settlement or in the amount of the consideration paid for the release, whichever is greater. See § 1–1–113(a)(i), supra.[7] In these circumstances, if the amount paid for the settlement is greater than the amount of the judgment eventually received, the judgment will always be satisfied by the settlement. In other words, the settling party cannot be placed in the position of having satisfied the entire judgment but of having no right to contribution because he was credited only with having satisfied his pro-rata share under the terms of the settlement. However, the settling party cannot recover excessive amounts paid for the settlement. Section 1–1–110(d).

"The settlement will not discharge any actor except the settling tortfeasor unless the terms so provide. Section 1–1–113(a)(i). Any amount the plaintiff receives over and above his judgment may be retained by the plaintiff, but, of course, if the plaintiff were to receive an amount of money in settlement that exceeds the amount of his judgment, he would not be entitled to recover anything further on his judgment.

"From the foregoing, it appears clear that the policy of comparative negligence, which seeks to eliminate the unjust concept of common-law contributory negligence by permitting negligent plaintiffs to recover from more negligent tortfeasors, cannot be discharged unless the burden among tortfeasors other than the plaintiff is also distributed equitably under the Right to Contribution Among Joint Tortfeasors statutes."

*Resolution of the Question Which Asks:*
Given the law of contribution among joint tortfeasors and comparative negligence, is it error for the trial court to

instruct the jury that settling tortfeasors remain in the case for the purpose of settling contribution and comparative-negligence issues?

■ The answer is yes.

An affirmative answer is mandated because, under the authorities and statutes set out above, negligence can never be assigned to a nonparty, as the jury was instructed to do in this case, for the purpose of ascertaining the nonparty's liability to the plaintiff or to any party or nonparty—nor can a settling tortfeasor be represented to the jury as a party for contribution-among-joint-tortfeasors purposes.

■ One who is not a party to a lawsuit cannot be bound by the fact finder's determination of his degree of fault. *Kirby Building Systems v. Mineral Explorations Company*, supra; *Palmeno v. Cashen*, supra; *Board of County Commissioners of County of Campbell v. Ridenour*, supra. Further, under § 1–1–113(a)(ii), W.S.1977, a nonparty who has entered into a settlement agreement with the plaintiff cannot be held liable, even in a separate action, for contribution to the other tortfeasors. Nonparties appear on the verdict form solely for the purpose of allocating negligence among all tortfeasors so that liabilities among tortfeasors who are parties to the action may be properly ascertained, and so that statutory contribution responsibilities may be later identified.

The trial court in the instant case instructed the jury that its apportionment of negligence could result in liability for alleged tortfeasors who had settled with plaintiff-appellant Burton prior to trial. The instructions, therefore, misinformed the jury as to the consequences of its verdict.

7. Section 1–1–113(a)(i), W.S.1977, provides:
"(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:
"(i) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; *but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; * * * "* (Emphasis added.)

*To Misinform the Jury Concerning The Consequences of Its Verdict Is Error*

■ Under Wyoming statutes, the jury must receive accurate information concerning the consequences of its verdict. Section 1-1-114, W.S.1977, provides in part:

" * * * In all cases the court shall inform the jury of the consequences of its verdict."

Section 1-1-109(b)(iii), W.S.1977, states the rule for comparative-negligence cases:

"(b) The court may, and when requested by any party shall:

&ast; &ast; &ast; &ast; &ast; &ast;

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

■ We held in *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977), that this duty devolves upon the court even though the plaintiff's counsel does not request it. In so holding, we relied upon *Appelgren v. Agri Chem, Inc.*, Colo.App., 562 P.2d 766 (1977), where the Colorado Court of Appeals, in interpreting the same provision as that contained in our § 1-1-114, supra, held that the word "shall" as employed in the statute is mandatory. In *Woodward v. Haney*, Wyo., 564 P.2d 844, 847 n.4 (1977), Justice Raper wrote for the court:

" * * * If the jury is to be informed of the effect of its verdict, it ought to be correctly informed to the fullest extent. * * * "

In general, when instructions tend to confuse or mislead the jury concerning applicable principles of the law, reversal is proper. *Cervelli v. Graves*, Wyo., 661 P.2d 1032 (1983).

■ The instructions and verdict form in this case misinformed the jury concerning the parties that were actually before the court for comparative-negligence purposes. We said in *Cervelli v. Graves*, supra, 661 P.2d at 1040, that incorrect and misleading jury instructions prejudice the parties and require reversal:

" * * * What a jury may decide upon hearing this case and after being proper-

ly instructed we are unable to say. What we must say, though, is that appellant should have the benefit of having his case decided by a properly instructed jury rather than by the trial court through an incorrect jury instruction."

Reversed and remanded for a new trial.

BROWN, Justice, dissenting, in which ROONEY, Justice, joins.

Appellant Burton was employed as a foreman for Davis Oil Company; while working he was seriously injured when a gas pressure regulator exploded. The regulator was installed several months before the accident under the direction of appellant. At the time the regulator was installed, appellant was warned that the regulator could not handle the pressure in the well where it was to be used. Nevertheless, he decided to have the regulator installed anyway. The regulator exploded as a result of high pressure beyond its capacity.

After all evidence was heard, the trial court granted a motion for directed verdict on the issue of supervisor A.J. Deans' gross negligence, but submitted the issue of Deans' ordinary negligence to the jury. The jury returned a verdict finding no negligence on the part of any defendants.

I

The majority find the trial court committed reversible error in directing a verdict on the issue of A.J. Deans' gross negligence. It should be emphasized that the jury found Deans, as well as all of the defendants, not guilty of even *ordinary* negligence. Yet, the majority determines that there was sufficient evidence of *gross* negligence to submit the issue to the jury. The majority opinion states:

" * * * These facts are adequate for purposes of structuring an issue for the jury and sufficient to remove the question as being one of law for the court. The trial court therefore erred when it directed the verdict in favor of Deans on the issue of his gross negligence."

It is difficult to see how the majority can make such a determination when the directed verdict came at the close of all the evidence and the jury found Deans not guilty of even ordinary negligence. This fact alone should be sufficient to establish lack of error in directing a verdict on this issue.

Ordinary and gross negligence differ in degree and the line that separates them is blurred. Gross negligence has been characterized as "an unhappy term of ill-defined content." *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979); and Prosser, Torts, p. 10 (4th ed. 1971). Gross negligence is an indifference to present legal duty and utter forgetfulness of legal obligations. It must be determined from the facts and circumstances in each case. *Knudson v. Hilzer*, Wyo., 551 P.2d 680 (1976).

Appellant's issue concerning the propriety of granting the motion for directed verdict on the issue of A.J. Deans' gross negligence is founded on the allegation that Deans, appellant's supervisor, knew of the dangerous high pressure at the well and did nothing to correct it.

To support this allegation the majority opinion quotes the testimony of Wayne Pierce, an individual contractor for Davis Oil, wherein Pierce testified that the well was dangerous. But the majority opinion does not quote Pierce's later cross-examination, wherein he admitted that he did not consider the well dangerous, and that it could be assumed that Deans did not consider the well dangerous either:

"Q. Why did you consider this well dangerous?

"A. I didn't really consider the well dangerous.

"Q. Okay. So can we assume A.J. Deans didn't consider it dangerous either?

\* \* \* \* \* \*

"A. Not to a dangerous state. \* \* \*"

In light of such testimony, it would be impossible for a jury to find Deans guilty of gross negligence. Gross negligence requires more than mere inadvertence or inattention; it is an extreme departure from the ordinary standard of care. Gross negligence infers positive or affirmative conduct, not conduct which is passive or negative. 65 C.J.S. Negligence § 8(4), pp. 540–541 (1966). In the face of only a questionable suggestion of Deans' negligence, I think the trial court was correct in finding insufficient evidence of gross negligence and in directing a verdict on this issue. The correctness of the court's holding was confirmed by the jury finding that Deans was not guilty of even ordinary negligence.

On the other hand, there was definite evidence of appellant's negligence. The regulator in question was installed upon appellant's insistence after appellant had been advised that a high pressure regulator should be used to lessen the danger of the high pressure. Appellant was a field foreman and knew of the high pressure building in the annulus since he worked with the wells daily. Appellant insisted on the "Big Joe" regulator because he stated he could not get enough gas out of a high pressure regulator. Joe Hood of H & H installed the regulator after advising appellant it was unsafe to use on the high pressure well. Mr. Hood testified:

"Q. Now, did you discuss this hook up with Mr. Burton prior to the time that you installed it?

"A. Yes, I did.

"Q. And what did that discussion consist of?

"A. He asked me to put on a Big Joe Regulator on this well head, and I discussed with him the dangers involved because this was not high enough pressure equipment for the pressure on the well head.

"Q. Did you try to talk Mr. Burton out of not installing that piece of equipment?

"A. Yes, I sure did.

"Q. And what did he say in response to that?

"A. I asked him to put on a—why he didn't put on a high pressure regulator. He said out of this Big Joe—I can't get enough gas out of a high pressure regulator.

"Q. Okay. So, your testimony is that you didn't think that that regulator was sufficient to handle the pressures; is that correct?

"A. That's right.

"Q. Did Donald Burton indicate to you what he might do to keep that regulator safe?

"A. He told me that the well would be kept blown to a safe pressure.

"Q. Okay. Was that satisfactory to you?

"A. It wasn't satisfactory, but I had to comply.

"Q. He insisted?

"A. He insisted."

Given the totality of the circumstances in this case, there was not sufficient evidence of gross negligence on the part of Deans to submit the issue to the jury, and I would affirm the trial court's directed verdict on the issue of gross negligence.

In *Town of Jackson v. Shaw*, Wyo., 569 P.2d 1246, 1250 (1977), this court said:

"In reviewing the grant of a directed verdict by a trial court, consideration must be given to all evidence favorable to party against whom the motion is directed, as well as to all reasonable and legitimate inferences which might be drawn therefrom. *McCarthy v. Croker*, Wyo.1976, 549 P.2d 323; *Barnes v. Fernandez*, Wyo.1974, 526 P.2d 983; *Brennan v. Laramie Newspapers, Inc.*, Wyo. 1972, 493 P.2d 1044. Whether or not the evidence so viewed is sufficient to create an issue for the jury is solely a question of law to be answered by the trial court. That court must determine whether or not the evidence is such that, without weighing the credibility of the witnesses, or otherwise, considering the weight of the evidence, there is but one conclusion as to verdict which men of reason could

reach. *Barnes v. Fernandez*, supra. * * * "

See also, *Vassos v. Roussalis*, Wyo., 658 P.2d 1284 (1983).

Within those guidelines I believe there was no error in granting the directed verdict. The court heard all the evidence before granting the directed verdict, and the jury found Deans not guilty of even ordinary negligence.

II

The majority finds error in the trial court's reference in the instructions and on the verdict form to those involved in the alleged negligent conduct as "defendants." The majority also concludes that the trial court erred in instructing the jury that any "defendant" would be liable to the plaintiff if his degree of fault exceeded that of the plaintiff. These determinations by the majority are incorrect for any one of several reasons.

The reasoning of the majority is a play on words. In paragraph after paragraph, the majority confirms what was said in *Kirby Building Systems v. Mineral Exploration Company*, Wyo., 634 P.2d 342 (1985); and *Board of County Commissioners of Campbell County v. Ridenour*, Wyo., 623 P.2d 1174 (1981). There we said that the jury must consider the causative negligence of all who participate in the conduct which causes the injury and that negligence must be apportioned to each on a percentage basis. This is proper even if some of the participants are not parties. Recovery by the plaintiff is on a one-to-one basis from those parties whose negligence is greater than his own. Having confirmed our holding in *Ridenour* and *Kirby*, the majority then makes a ponderous distinction between the words "actors," "parties" and "defendants." Of course, a nonparty or a party no longer involved in the lawsuit because of settlement or otherwise cannot be liable in the lawsuit regardless of jury determination. This is true as a matter of law, not of fact. It makes no difference to a factfinding jury whether the instructions

or verdict form refer to those whose fault must be found and apportioned as actors, parties A, B and C, Jones, Smith and Coolekranski, or defendants. The jury's function is to determine fault, if any, and to apportion it among those involved in the tortious conduct.

To suggest that the jury in the present case could not understand the language used in the instructions and on the verdict form does the jury an injustice. Juries are composed of intelligent men and women. To serve as a juror, one must be:

"In possession of his natural faculties, of ordinary intelligence and without mental or physical infirmity preventing satisfactory jury service."

Additionally, a jury is not concerned with the legal effect of an apportionment. A jury merely apportions fault among those listed on the verdict form. The court then reflects that apportionment in the appropriate manner in its judgment.

Jury instructions must be construed and considered together and a party is not prejudiced by a particular instruction when the matter complained of is covered by another instruction or is cured by reading the instructions together. *Cates v. Eddy*, Wyo., 669 P.2d 912 (1983); and *Wood v. Wood*, 25 Wyo. 26, 164 P. 844 (1917). Instruction No. 2 began:

"Donald Burton, plaintiff herein, claims damages for injuries he claims he sustained as a result of an accident which occurred on March 8, 1977. Burton will hereinafter be called 'Burton' or 'Plaintiff', and Fisher Controls Company, a corporation, Olman-Heath, a corporation, A.J. Deans and G. Wayne Pierce, dba Pierce Construction Company will hereinafter be called 'Fisher', 'Olman', 'Deans' and 'Pierce' individually, or collectively for convenience, as 'Defendants'.

"It has been claimed that all of the above were guilty of negligence, and that such negligence, sometimes hereinafter called 'fault', was either wholly or partially, a direct cause of the accident and of any

injuries and damages sustained by Burton."

Instruction No. 17 reads:

"It may be necessary to determine the fault of more than one party, *even though some of them are not now Defendants in the case, having been dismissed for one reason or another and which shall not concern you in your deliberations,* but it does not follow from the fact alone that if one party was at fault that all parties were at fault.

"Each party is entitled to a fair consideration of his or its own defense and is not to be prejudiced by the fact, if it should become a fact, that you find against another party. The instructions govern the case as to each party, insofar as they are applicable, to the same effect as if each was the only party in the action, and regardless of whether reference is made to party or parties in the singular or plural forms.

"You will decide as to each party whether that party was at fault and whether such fault, if any, was either wholly or partially, a direct cause of the accident and of any injuries and damages sustained by Plaintiff." (Emphasis added.)

It cannot be said that a juror "of ordinary intelligence" would not easily conclude from Instruction No. 17, quoted in the majority opinion, and from the verdict form (see fn.1, majority opinion) that percentage of fault, if any, was to be apportioned by the jury among the five participants and that some of the participants may have been dismissed from the lawsuit.

In addition to what has already been said, the majority opinion is incorrect for a second reason. How can there be reversible error founded on apportionment of fault, whether between parties, actors, defendants, or any other designated group, or on a question about the relative degrees of fault between plaintiff and defendants, or parties, or actors, or any other designated group, when the defendants, actors or parties (other than plaintiff) were not negli-

gent at all? To reason further is unnecessary. The verdict form first asked if there was negligence on the part of Fisher, Olman, Deans and/or Pierce. The answer was "no." Therefore, whether they were called defendants, actors or otherwise, makes no difference. If liability could not attach to one or more of them for a different and independent reason, what they were called is of no consequence.

A similar situation arose in *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). In that case, we held that while it may have been error to include certain parties' names (Kasters) on a verdict form since they were not tortfeasors and the claim against them was only for contribution, such error was rendered *harmless in light of the jury's finding of no negligence on their part:*

> "Since it was error for the district judge to include the Kasters on the verdict form, does that constitute such error that we must reverse and send the case back for a new trial or was the error harmless? Rule 7.04, W.R.A.P., declares that '[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.' *While it was not a function of the jury to make any determination of law, by its finding of zero negligence as to the Kasters it arrived at a finding which caused the ultimate outcome of the case in the court's final judgment on the verdict to be correct. The result was the same as though the Kasters had not been included on the verdict form.* * * *" (Emphasis added.) Id., at 934.

For the foregoing reasons the majority is wrong in concluding that the trial court erred. However, if by some stretch of the imagination the trial court could be said to have erred, the error was harmless. Rule 61, Wyoming Rules of Civil Procedure, provides:

> "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

This rule is merely declaratory of old principles of law established by statute and rules of equity. *Robertson v. State Highway Commission*, Wyo., 450 P.2d 1003 (1969).

Finally, the majority incorrectly fails to recognize appellant's waiver of any error in connection with the instructions.

Appellant submitted a proposed jury instruction explaining that Fisher was not a defendant in the case and any damages awarded would be reduced by the amount of negligence attributable to Fisher. This instruction was denied by the court; however, no such instruction was proposed explaining that Pierce also was not a defendant and the effect of finding any negligence attributable to him. If appellant is to be consistent, he should have proposed instructions explaining that both Fisher and Pierce had settled their claims with appellant and the effect of the jury's finding any negligence attributable to them.

Appellant claims his credibility suffered because the court allowed the jury to consider the alleged negligence of all the defendants even though settlement was reached with some of the defendants prior to trial. Appellant claims this left a false impression with the jury as to who the parties were and the effect of any potential verdict.[1]

---

1. It is noted that all of the initial defendants were included in the verdict except H & H. As stated earlier, H & H was granted summary judgment. Neither party complained about H & H not being listed in the verdict form so the effect, if any, need not be addressed.

We have held that it is not only a party's obligation, but his duty to submit a proper instruction to the trial court and without such instruction, he is deemed to have waived any error with respect to that instruction.

> "* * * This court has heretofore observed that the parties not only have this right but this duty, and in the absence of submission of a proper written instruction they are deemed to have waived the claimed error, *Logan v. Pacific Intermountain Express*, Wyo., 400 P.2d 488, 492 [(1965)]." *Texas Gulf Sulphur Company v. Robles*, Wyo., 511 P.2d 963, 969 (1973).

Such is the spirit embodied in Rule 51, W.R.C.P., which requires objections to instructions be specific and directing the submission of potential instructions to the trial court.[2]

In discussing Rule 51, W.R.C.P., we stated in *Haley v. Dreesen*, Wyo., 532 P.2d 399, 402 (1975):

> "* * * When an assignment of error is premised upon an objection to an instruction which has been given the record must contain a clear statement, defining the matter objected to and explaining the grounds of the objection, sufficient to inform the trial judge of possible errors so he may have an opportunity to correct them. While this latter situation does not always require the submission of the objecting party's version of a proper instruction, if his objection is to the form or language of an instruction, rather than to the propriety of giving any instruction on the issue, the best way to inform the court of his position is by the submission of his suggested language, in writing if possible."

Furthermore, the court in *Gore v. State*, Wyo., 627 P.2d 1384, 1389 (1981), stated:

> "* * * [U]nless an instruction can be said to have plainly caused a fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place."

It is clearly a party's duty to present proposed instructions embodying their theory of the case. *Benson v. State*, Wyo., 571 P.2d 595 (1977). Appellant failed to do this. For the reasons stated, I would affirm the trial court in all respects.

---

2. Rule 51, Wyoming Rules of Civil Procedure, reads:

> "At any time before or during the taking of evidence, the court may give to the jury such general instructions as to the duties and functions of the court and jury, and the manner of conducting the trial, as it may deem desirable to assist the jury in performing its functions. Such instructions, inclusive of rulings which are recorded by the court reporter for inclusion in any record, shall be reduced to writing, numbered and delivered to the jury with the other instructions and shall be a part of the record in the case.
> "At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary and same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make any such objection out of the hearing of the jury. All instructions offered by the parties, or given by the court, shall be filed with the clerk and, with the endorsements thereon indicating the action of the court, shall be a part of the record of the cause."