Margaret BYRNS and Francis Byrns,
Individually and as Husband
Wife, Appellants,

v.

ST. LOUIS COUNTY, Minnesota, et
al., Respondents.

Nos. 49470, 49585.

Supreme Court of Minnesota.

June 20, 1980.

MacDonald & Munger and Harry L. Munger, Duluth, for appellants.

Alan L. Mitchell, County Atty., and Mary L. Peterson, Asst. County Atty., Duluth, for respondents.

Heard before KELLY, TODD, and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.˙

Plaintiff Margaret Byrns was a passenger in a car that collided with a snowplow driven by defendant Johnson in the course of his employment with defendant St. Louis County. She and her husband Francis Byrns brought suit, claiming that Johnson's negligence caused the collision, resulting in permanent injury to Mrs. Byrns' neck. After a trial, the jury found the driver of the car to be negligent, but also found that the negligence was not a direct cause of the accident. The jury found defendant Johnson non-negligent. The jury assessed Mrs. Byrns' damages at $20,000 and Mr. Byrns' at $0. Plaintiffs brought a motion for a new trial on several grounds. The St. Louis

County District Court denied the motion, and ordered judgment for defendants. The plaintiffs now appeal from that order. We reverse and remand for a new trial.

On January 12, 1976, around 7:30 a.m., a car driven by Cathy Racek collided with a snowplow operated by defendant Johnson, an employee of defendant St. Louis County, on State Highway No. 7 just south of the intersection of County Road No. 311. Plaintiff Margaret Byrns was a passenger in the Racek vehicle, which was heading north on Highway 7. It was light outside at the time, and there was a thin layer of snow on the road. The truck of the snowplow was a yellow Ford Tandem F-9000 with flashing yellow lights and was about eight feet wide. The plow attached to the truck was mounted at an angle, so that its extension was also about eight feet from side to side. At the time of the accident, the snowplow had just crossed the intersection heading south on Highway 7. The position and activity of the snowplow was disputed, however, at trial.

Irving Johnson, the driver of the snowplow, testified that he had crossed County Road 311 in order to leave the accumulated snow on the blade of his plow on the west side of Highway 7. To achieve this end he stopped about forty feet south of Road 311. When stopped he noticed Mrs. Racek's car in the northbound lane of Highway 7 about a "block" away. Johnson testified that he then started backing up the snowplow at a speed of about 2–3 miles per hour, with the aim of turning onto Road 311. He backed up about 40 feet and then checked again for the northbound vehicle. He testified that Mrs. Racek's car at that point was only a few feet away and heading into the southbound lane of traffic. The Racek vehicle then collided with the blade of the snowplow. According to Johnson, at impact, the snowplow was completely within the southbound lane. Johnson stated that "the oncoming car probably lost a little control because of the slipperiness of the snow." After impact, the Racek car slid sideways and forward off of Highway 7 on the east side.

Mrs. Racek testified that Highway 7 was straight and flat and that she saw the snowplow a long way off before impact. She was traveling about 30–40 miles per hour, and decelerating for the intersection. Racek testified that, as she approached the snowplow, she could tell it had pulled over to the side and stopped. However, Racek also testified that the plow was moving one to two miles per hour at impact. When stopped before impact, the plow was on its side of the road but at impact the blade of the plow was "coming into [her] car." She testified that she did not cross the center-line and did not lose control of her car by skidding.

Margaret Byrns testified that the Racek vehicle was going about 10 miles per hour at impact. She was asked if she saw the plow backing up and she answered, "No. We thought it was standing still." She testified that Racek's car was on "her side of the road" at impact. The car did not skid, and Mrs. Racek did not lose control of it. Even though Mrs. Byrns testified that the plow appeared to be standing still, at another point she concluded that the cause of the accident was that the "[s]nowplow backed into us."

Another witness, Leonard Pritchett, was a passenger in a car following the Racek vehicle northbound on Highway 7. He testified that the blade of the plow crossed the centerline and hit the Racek vehicle on the right side.

As a result of the impact, the Racek car ended upon on the east shoulder of Highway 7 about 3 to 4 feet east and 3 to 4 feet north of the point of collision. After the accident, the left side of Mrs. Byrns' face swelled considerably and she had two black eyes. She complained of neck pain, which was later diagnosed as permanent cervical strain caused by the accident.

After a trial the case was submitted to the jury on a special verdict form that required them to judge the causal negligence of Mrs. Racek and defendant Johnson. The jurors found Johnson non-negligent. They found that Racek was negligent, but that her negligence was not a direct cause of the accident. Mrs. Byrns' damages were assessed at $20,000 and Mr. Byrns' at $0. Plaintiffs subsequently brought a motion for a new trial on various grounds, and a motion for a Schwartz hearing. Both motions were denied by the trial court, and judgment was ordered for the defendants. Plaintiffs now appeal from that order.

As related above, the factual issues in this case were highly contested. The testimony of Irving Johnson contrasted with that of Mrs. Racek, Mrs. Byrns, and Mr. Pritchett at several points, most significantly on the issue of which vehicle was over the centerline at the time of the impact. Although, of course, the jury findings are entitled to great deference by this Court on appellate review, we believe that irregularities in certain court instructions, in the jury verdict, and in the argument of defendant's counsel, require us to reverse and remand for a new trial.

The first issue we consider is the trial court's refusal to give the emergency doctrine instructions in regard to Mrs. Racek's driving. The emergency rule provides that "one, suddenly confronted by a peril, through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." *Johnson v. Townsend*, 195 Minn. 107, 110, 261 N.W. 859, 861 (1935); see W. Prosser, Handbook of the Law of Torts § 33, at 168–70 (4th ed. 1971). An instruction on this theory should be given upon request by a party where the evidence would sustain a finding that one of the persons whose negligence will be submitted to the jury had been confronted with a sudden peril or emergency and acted under its stress. *See Gran v. Dasovic*, 275 Minn. 415, 419, 147 N.W.2d 576, 579 (1966).

In the present case, there was some evidence that Mrs. Racek could have been skidding on the road prior to the impact, and that the skid was not a result of her

own negligent action.[1] The jury could further have found that if Mrs. Racek swerved over the centerline, she only did so in an effort to deal with the emergency situation caused by the skidding of her car. If the jury believed that the skid occurred, and was not the fault of Mrs. Racek, it would also be for the jury to decide whether Mrs. Racek's choice of action under the circumstances was so hazardous that the ordinary prudent person would not have made it under similar circumstances. *See Gran v. Dasovic*, 275 Minn. 415, 147 N.W.2d 576 (1966). We feel therefore that the trial court should have given the emergency rule instruction in this case.

▮ The trial court in its instructions initially failed to charge the jury on either direct or concurring cause. When the plaintiff's counsel pointed out the absence of the direct cause instruction at the close of the charge, the court at that time instructed the jury on direct cause, but not on concurring cause. In its instruction, the court further charged the jury of the parties' contentions concerning defendant's negligence, stating, "The plaintiffs in this action claim that the defendant's negligence was *the* direct cause of the plaintiff's injuries and damages. The defendant denies that he was negligent or that his negligence, if any, was *the* direct cause of plaintiff's injuries." (Emphasis added).

We have stated that in a case where each party charges the other with negligence directly causing an accident, an instruction on concurring cause should be given. *Smith v. The Kahler Corp.*, 297 Minn. 272, 280–82, 211 N.W.2d 146, 152–53 (1973); *see* 4 Minnesota Practice, Jury Instruction Guides, JIG II, 141 (2d ed. 1974). This reasoning should be equally true when the issue of the causal negligence of any two persons is submitted to the jury. In addition, we have recognized that in cases where the negligence of two or more persons possibly concurred to cause the injury,

reference in a court's instructions to *the* cause of an injury, rather than *a* cause of an injury is inaccurate. *See Leebens v. Baker Co.*, 233 Minn. 119, 122, 45 N.W.2d 791, 793 (1951). *See also Pluwak v. Lindberg*, 268 Minn. 524, 533, 130 N.W.2d 134, 141 (1964). In combination, the reference to "the" cause of an accident and the absence of a concurring cause instruction could act to confuse jurors as to whether two parties could both be found to have legally caused an accident.

The failure of the trial court to instruct on concurring cause attains more significance viewed in light of the ultimate jury verdict finding Mrs. Racek's actions to constitute negligence, but not causal negligence. The verdict in this case is much like the one held to be perverse in *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (1967). *See also Bergemann v. Mutual Service Insurance Co.*, 270 N.W.2d 107 (Minn.1978). It is difficult to understand how any negligence on the part of Mrs. Racek—whether in speed, lookout, or crossing the centerline—could not also have been a direct cause of the accident. We thus believe that the instruction on concurring cause should have been given in this case.

▮ The final irregularity we note occurred in the final argument of defendant's counsel in the context of statements previously made during voir dire. During voir dire, defendant's counsel made a reference to the fact that the amount of any verdict would come out of taxpayers' money. Plaintiff objected, but did not move for a mistrial at that time. In final arguments, defendant's counsel made the following statement:

> *I told you before* that a Complaint is like a bill. It's like handing somebody a bill and saying, first of all, "you are obligated to pay"; and secondly, "Look at the bottom line, that's what we think you owe".

---

1. The trial court specifically instructed the jury on this point, stating, "The fact that a motor vehicle has skidded standing alone is not evidence of negligent driving. If the skidding could have been prevented by the use of reasonable care, then it is evidence of negligence." *See also Oldendorf v. Eide*, 260 Minn. 458, 110 N.W. 2d 310 (1961).

In this case the County disputes, first of all, that we should pay the bills; and secondly, if you find that the County should pay the bills, the amount owing is entirely in dispute.

The system requires that in order for a plaintiff to recover from a defendant, claiming that something is owed, they must prove it. And that's only fair. Because if plaintiffs didn't have to prove their cases, *we'd all be lined up at the County Courthouse trying to get as much money as we could for free."* (Emphasis added).

An appeal by counsel that is aimed primarily at the self-interest of a juror is improper, *see e. g., Ferguson v. Northern States Power Co.,* 307 Minn. 26, 37–38, 239 N.W.2d 190, 197 (1976), including an appeal aimed at the jurors' interests as taxpayers. *See Massoni v. State Highway Commission,* 214 Kan. 844, 853, 522 P.2d 973, 981 (1974); *Sullivan v. County of Allegheny,* 187 Pa.Super. 370, 378, 144 A.2d 498, 502 (1958); Annot., 33 A.L.R.2d 442 (1954). In the present case defense counsel improperly attempted to impress upon the jurors the fact that they as taxpayers would be paying any verdict; first, by direct reference during voir dire, and later by reference to claimants looking for free money at the County Courthouse. Although this improper argument may not by itself be cause for reversal, we feel that it, along with the trial court's failure to instruct on concurring cause and the emergency doctrine, and in view of the highly contested factual issues in this case, makes a new trial necessary.[2]

Reversed and remanded.

OTIS, J., took no part in the consideration or decision of this case.

2. We therefore need not address plaintiffs' other contentions.