642 P.2d 868

Mary K. INGRUM, a single woman, Plaintiff/Appellee,

v.

TUCSON YELLOW CAB CO., an Arizona corporation; and Michael M. Shore, a single man, Defendants/Appellants.

No. 2 CA–CIV 4034.

Court of Appeals of Arizona, Division 2.

Dec. 17, 1981.

Rehearing Denied Jan. 28, 1982.

Review Denied Feb. 23, 1982.

Davis, Siegel & Gugino by Barry M. Davis and Michael L. Piccarreta, Tucson, for plaintiff/appellee.

Murphy & Hazlett by Carl E. Hazlett, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

This case arose out of the collision between a motorcycle and a taxicab. Appellee, a passenger on the motorcycle, was awarded a jury verdict of $450,000 which was subsequently reduced by the trial court to $435,000. Appellants contend the trial court erred in instructing the jury, in refusing to instruct on contributory negligence, in rejecting certain portions of depositions and in refusing to grant a new trial because of certain improprieties and irregularities which deprived them of a fair trial. We disagree and affirm.

### I

In the early hours of September 1, 1978, appellee Mary Ingrum was a passenger on a motorcycle driven by Eugene Swayngim. They were proceeding south on Dodge Boulevard in Tucson when they both saw a Yellow Cab in front of them which was traveling in the same direction. They both observed that the cab was driving slowly and that it appeared the driver of the cab was looking for something. The deduction of the riders was correct. Inside the cab were two passengers, Michael Murphy and John Stange. They were going to an address with which the cab driver was unacquainted and they were going to tell him when to turn.

Swayngim neared the cab, and when he started to pass on the cab's left, the cab made a left-hand turn. Swayngim braked the cycle which slid into the cab. Mary Ingrum was seriously injured.

There was conflicting testimony as to whether the cab driver signaled for a left-hand turn. He testified that he did. Swayngim and Ingrum testified at the trial that he did not. Michelle Ventress, one of Mary Ingrum's friends, visited her in the hospital. She testified that Mary told her in the hospital that the cab was going in the opposite direction from the motorcycle and was signaling for a turn at the intersection when it went straight instead of turning and hit the motorcycle.

The testimony was clear that neither the cab driver nor his passengers saw the motorcycle prior to the accident.

Appellants' accident reconstruction expert testified that in his opinion the motorcycle attempted to pass the cab within 100 feet of the intersection of Dodge and Seneca Streets and that the cab "cut the corner" in making a left-hand turn.

## II

Appellants contend the trial court erred when it inadvertently mixed in two simple negligence instructions with the instructions concerning the violation of certain statutes as being negligence per se. These two instructions were as follows:

"It is the duty of every motorist at all times to keep and maintain a proper lookout for other vehicles and persons upon the highway. A driver has the obligation to make such observation as will enable him to see what a person in the exercise of ordinary care could and should have seen under the circumstances then and there existing.

Thus, a driver is negligent if he collides with an object or person which he has failed to see and which an ordinarily prudent driver, under like circumstances, would have seen."

Appellants did not object when the instructions were given, nor did they ask for a clarification of the instructions when the trial court asked counsel, after reading them, whether the court had omitted anything. Instead, appellants waited until the jury retired and then moved for a mistrial which was denied.

Appellants contend the trial court erred in denying their motion for a mistrial and contend the erroneous reading of the instructions mandates reversal. We do not agree.

■ Before a party can assign as error the giving or failure to give an instruction, he must object thereto before the jury retires to deliberate. Rule 15, Arizona Rules of Civil Procedure, 16 A.R.S. That was not done here. Had appellants pointed out to the trial judge that he had read the instructions in the wrong order, the matter could have been easily remedied. While the jury may have understood from the order in which the instructions were given that a violation of the standards set forth in the two instructions constituted negligence per se, the instructions themselves require a finding of negligence. Thus the error was not prejudicial. Cf., *Deering v. Carter*, 92 Ariz. 329, 376 P.2d 857 (1962).

## III

■ Appellants argue the trial court erred when it refused to instruct the jury on contributory negligence. Appellee's alleged negligence consists of "having a few drinks" earlier in the evening, failing to warn the motorcycle driver that the cab had its turn signal on, and the failure to warn that the cab was going slowly.

The leading Arizona case on the liability of a passenger is *Mitchell v. Colquette*, 93 Ariz. 211, 379 P.2d 757 (1963). It adopted a comment from the Restatement Torts § 495 now found in Restatement (Second) Torts § 495, Comment *c*:

"*c. Care required of guest or passenger in automobile.* Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout *or to see to it that he shall be in a condition to do so.* Thus, a plaintiff rid-

ing in the front seat may take his attention off the road to look at the scenery or may turn around to speak to a friend in the back, or he may go to sleep or read a book, without being guilty of contributory negligence if the driver commits some negligent act which the plaintiff, had he been on the alert, might have had the opportunity to prevent. However, if the plaintiff knows that at a particular point there will be a peculiar danger, *which he has no reason to believe that the driver if unaided will perceive*, the plaintiff may be negligent if he does not keep himself in a position to call the danger to the attention of the driver. *Save under such exceptional circumstances*, a plaintiff is entitled to trust the vigilance and skill of his driver *unless he knows from past experience, or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless.* So too, the plaintiff is not required to keep his eyes constantly on the speedometer to see whether the driver is exceeding the legal speed limit, but he is required to call the attention of the driver to his excessive speed only when the speed is so great that a reasonable man would realize its excessive character." (Emphasis added)

Application of this law to the facts shows the trial court did not err. Both Mary Ingrum and Swayngim observed the cab traveling slowly. If the cab driver did signal for a left-hand turn, Mary had no reason to believe that Swayngim did not see it. The fact that appellee had a "few drinks" sometime earlier is of no legal significance. Since Mary wasn't driving the motorcycle, it can't be claimed that the drinking affected the operation of the motorcycle and Comment *c* makes it clear that except in exceptional situations, which are not present here, a passenger need not be in a condition to keep a lookout.

## IV

■ Michael Murphy, one of the passengers in the cab, was unaware of the presence of the motorcycle or of an impending collision until after it occurred. The trial court refused to allow into evidence a portion of his deposition wherein he expressed his opinion that he didn't think there was anything wrong with the way the cab driver was driving. The trial court also refused the deposition testimony of John Stange to the same effect. Appellee claims this was error. We do not agree.

Rule 701 of the Rules of Evidence states:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Rule 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be cited by the trier of fact."

The comment under Rule 704 also states:

"Some opinions on ultimate issues will be rejected as failing to meet the requirement that they assist the trier of fact to understand the evidence or to determine a fact in issue. Witnesses are not permitted as experts on how juries should decide cases."

The testimony which appellants sought to introduce fell under the comment to Rule 704. It did not assist the jury to understand the evidence or determine a fact in issue.

■ Appellants also claim that the trial court erred in refusing into evidence the deposition testimony of Murphy wherein he stated that he did not see the lights on the motorcycle *at any time that evening.* Appellee objected to the testimony because Murphy said he never saw the motorcycle until after the accident. The trial court sustained the objection. Appellants claim this was error because the testimony was relevant to show that the motorcycle did not have its lights on prior to the accident. We do not agree.

Murphy was allowed to testify that he saw the motorcycle after the accident and its lights were off. However, his testimony that he never saw the lights on at *any time that evening* is misleading since he never saw the motorcycle until after the accident.

## V

■ Appellants allege the trial court erred when it refused to admit the deposition testimony of a police officer, Greg Salverson, who was the first officer to arrive at the accident scene. We do not agree. The rejected testimony included the fact that the traffic investigator for the police department, another officer, probably issued a traffic citation to Swayngim. The fact of citation or non-citation of a driver by the investigating law enforcement officer is inadmissible in an action for negligence. *Warren v. Hart*, 71 Wash.2d 512, 429 P.2d 873 (1967); *Billington v. Schaal*, 42 Wash.2d 878, 259 P.2d 634 (1953); *Cotton v. Pyle*, 400 S.W.2d 72 (Mo.1966). The rationale as stated in *Billington v. Schaal*, supra, is:

> "While an arrest or citation might be said to evidence the on-the-spot opinion of the traffic officer as to respondent's negligence, this would not render the testimony admissible. It is not proper to permit a witness to give his opinion on questions of fact requiring no expert knowledge, when the opinion involves the very matter to be determined by the jury, and the facts on which the witness founds his opinion are capable of being presented to the jury. [citations omitted] The question of whether respondent was negligent in driving in too close proximity to appellant's vehicle falls into this category. Therefore, the witness' opinion on such matter, whether it be offered from the witness stand or implied from the traffic citation which he issued, would not be acceptable as opinion evidence."

Not only was the evidence inadmissible under the rationale of the foregoing cases and under Rule 701, Rules of Evidence, and the comment to Rule 704, but it was also inadmissible hearsay.

While some of Officer Salverson's deposition testimony was admissible, some of it was not admissible. In *Sage v. State*, 22 Ariz. 151, 195 Pac. 533 (1921), the court held that where an offer is made to prove several things grouped together and the court refuses to hear the proof, the ruling will be sustained if the proof of any one of the things was inadmissible, since it is not the duty of the court in a criminal case to separate admissible from inadmissible evidence when embraced in a single offer. This rule applies equally in civil cases and accordingly applies here. See *Warshaw v. Rockresorts, Inc.*, 57 Haw. 645, 562 P.2d 428 (1977).

## VI

■ Prior to the impaneling of the jury, appellants' counsel observed Mary Ingrum talking to two prospective jurors. He brought this to the court's attention in chambers and asked the court to excuse the two prospective jurors in view of the fact that there were 30 new prospective jurors available. The court refused to excuse these two jurors, and one of them ended up being a trial juror since appellants did not have enough strikes to strike that juror in addition to other jurors appellants did not consider desirable for the case. Appellants claim the trial court erred in its refusal. We do not agree.

Appellants made no attempt to find out the nature of the conversation between the two prospective jurors and Mary Ingrum. Nothing was presented to the trial court other than the fact that a conversation had taken place. Appellants' failure to show any prejudice justifies the court's refusal.

■ Appellants contend that the appellee's counsel made improper remarks in his opening statement to the jury. Having failed to object to those remarks, appellants cannot now assign them as error.

Appellants contend the trial court erred in refusing its instructions numbered 11, 14 and 15. We do not agree. Appellants' requested instruction number 11 misstated the law and was properly refused. Instruc-

tions number 14 and 15 were covered by previous instructions.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.