Ted **HARMON** and Ada Jan Harmon,
husband and wife, Appellants
(Plaintiffs),

v.

**TOWN OF AFTON**, a municipal
corporation, Appellee
(Defendant),

Julie Hunting (Defendant).

No. 86-127.

Supreme Court of Wyoming.

Nov. 20, 1987.

Roy A. Jacobson, Jr., and Sharon M. Rose of Vehar, Beppler, Jacobson, Lavery and Rose, P.C., Kemmerer, for appellants.

John A. Sundahl and Paul Kapp of Godfrey, Sundahl & Jorgenson, Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellants Ted and Ada Jan Harmon brought an action against Julie Hunting and appellee Town of Afton following an automobile accident in which Ted Harmon suffered injuries to his back and legs. In the course of the proceedings, Hunting was discharged in bankruptcy from any liability arising from the accident, and appellants proceeded to trial against appellee. At the close of the evidence, the jury found that appellee was negligent but that its negligence was not the proximate cause of the accident. In accordance with the jury's findings, the district court entered judgment in favor of appellee.

We affirm.

Appellants set forth three issues on appeal:

1. Whether the jury's finding that appellee's negligence was not the proximate cause of the accident is supported by substantial evidence;

2. Whether the district court erred in instructing the jury and allowing counsel for appellee to comment on the effect of joint and several liability; and

3. Whether the district court erred in denying admission of the accident report into evidence.

On February 15, 1984, at approximately four in the afternoon, Ted Harmon was driving west on Sixth Avenue in Afton, Wyoming. As he entered the intersection of Sixth Avenue and Madison Street, another vehicle traveling north on Madison Street also entered the intersection. Harmon attempted to brake and swerve to the right, but the left front of his vehicle struck the right front side of the second vehicle.

Both Madison Street and Sixth Avenue are two-lane streets. Traffic is controlled at the intersection by yield signs facing the northbound and southbound lanes of Madison Street. There are no traffic lights or signs at the intersection controlling eastbound and westbound traffic on Sixth Avenue. At the time of the accident, the streets were snow packed and icy. Snowbanks left by plows lined the edges of both streets.

Upon impact, the passenger side of the northbound vehicle driven by Hunting slid into the driver's side of Harmon's car. As the cars collided, Harmon felt a sharp pain in his back and legs. When his car came to a stop and he attempted to get out, he realized he could not move his legs. Hunting went to a nearby house and called the police. A short time later, an officer of the Afton police department arrived, followed by an ambulance. Harmon was extracted from his car and taken to the hospital.

On February 27, 1985, appellants filed a negligence action against Hunting and appellee. In their complaint, appellants alleged that Hunting was negligent in failing to keep a proper lookout, control her vehicle, yield to oncoming traffic, and exercise care for her safety and that of others. In their claim against appellee, appellants alleged generally that appellee violated its duty to exercise reasonable care in maintaining the streets by creating a dangerous condition along Sixth Avenue and Madison Street. Appellants set forth a variety of dangerous conditions including snowbanks; inadequate traffic signals; insufficient

equipment, manpower, and supervision; lack of sanding; and improper design of the intersection. Appellant's complaint further stated that, as a direct and proximate cause of the negligence of Hunting and appellee, Ted Harmon sustained injuries to his back and legs, and his wife, Ada Jan Harmon, was denied the care and companionship of her husband. After Hunting was discharged in bankruptcy from any liability, appellants filed an amended complaint naming appellee as the sole defendant.

# I

■ Appellants contend that the jury's finding that appellee's negligence was not the proximate cause of the accident is not supported by substantial evidence.

We previously have held:

" 'As a reviewing court, we assume the evidence of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may reasonably be drawn from it.' " *Huang International, Inc. v. Foose Construction Company*, Wyo., 734 P.2d 975, 979 (1987), quoting *DeJulio v. Foster*, Wyo., 715 P.2d 182, 185 (1986). "[W]hen dealing with questions of fact, this court will not ordinarily substitute its judgment for that of the jury. * * * So long as there is sufficient evidence upon which the jury could rationally base its findings, such findings will not be adjusted in any way by this court." *DeJulio v. Foster*, 715 P.2d at 185. " 'In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflicts therein and drawing its own inferences if more than one inference is permissible. Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive.' " *Reese v. Dow Chemical Company*, Wyo., 728 P.2d 1118, 1120 (1986), quoting

*Crown Cork & Seal Company, Inc. v. Admiral Beverage Corporation*, Wyo., 638 P.2d 1272, 1274–75 (1982).

While recognizing the existence of these standards of review, appellants argue that, in the present case, the jury's finding that appellee's negligence was not the proximate cause of the accident is not supported by even a scintilla of evidence and that, even upon viewing the evidence in the light most favorable to appellee, the evidence supports the conclusion that appellee's negligence was a proximate cause of the accident. More specifically, appellants claim that, because the jury found that Ted Harmon was not negligent, we must assume he acted with due care and would have seen and avoided Hunting had it not been for the negligence of appellee in failing to properly remove the snowbanks.

"Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence. The law does not charge a person with all the consequences of a wrongful act, but ignores remote causes and looks only to the proximate cause." *DeWald v. State*, Wyo., 719 P.2d 643, 651 (1986) (citation omitted).

"Proximate cause is a question of fact to be determined by the trier of facts unless only one conclusion can be drawn from the evidence." *Ely v. Kirk*, Wyo., 707 P.2d 706, 711 (1985).

In the present case, the evidence presented was susceptible to more than one conclusion; more than one reasonable inference could be drawn from it. The testimony as to the height of the snowbanks and whether the snowbanks actually obscured visibility was contradictory. On the one hand, there was testimony that the snowbanks were eight feet high; on the other hand, there was testimony that they were only three feet high. Similarly, while there was testimony that the snowbanks obstructed visibility, Hunting testified at one point that she could see down Sixth Avenue and that she decided to proceed through the intersection only after she had full clear visibility. In addition, Ted Harmon testified that Hunting proceeded through the

intersection without looking in his direction. On the basis of this testimony, we are not prepared to say that the jury's finding that appellee's negligence was not the proximate cause of the accident is unsupported by substantial evidence. That we might have reached a different result is not grounds for overturning a jury verdict. *DeJulio v. Foster,* supra.

## II

■ Appellants also contend that the district court erred in instructing the jury and allowing counsel for appellee to comment on the effect of joint and several liability. The district court gave the following instruction:

## "INSTRUCTION NO. 16a

"This case must be determined on the basis of comparative negligence of the parties involved in the occurrence. In deciding the case, you will need to know the meaning of the term 'negligence'. "Negligence has been defined for you in earlier instructions.

"It will be necessary for you to determine the percentage of negligence, if any, of each of the parties involved in the occurrence. It also will be necessary for you to determine the amount of damages sustained by any party claiming damages.

"The law of Wyoming applicable to this case requires the Court to reduce the amount of damages you have awarded to any party by the percentage of negligence, if any, that you find is attributable to that party.

"The percentage of negligence of Ted Harmon, if any, will be compared to the negligence, if any, of the Town and Julia Hunting. If the negligence of the Town is equal to or less than the negligence of Harmon, the plaintiff will not recover damages from the Town. However, if the negligence of the Town is greater than the negligence of Harmon, the Plaintiffs will recover all of the damages to which they are entitled solely from the Town. The Court will reduce the amount

of such damages which you have awarded by the percentage of negligence that you find attributable to Ted Harmon. In no event will the Plaintiffs be entitled to recover if Harmon's negligence is 50% or more."

Appellants do not contend that the instruction misstates the law; they contend that the instruction should not have been given at all. They claim that, in giving the instruction, the district court relied on the following statutory provision:

Section 1–1–109, W.S.1977.[1]

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

\* \* \* \* \* \*

"(iii) *Inform the jury of the consequences of its determination of the percentage of negligence.*" (Emphasis added.)

Appellants argue that the court's reliance on this provision is misplaced for the reason that § 1–1–109 deals exclusively with comparative negligence, which is separate and distinct from joint and several liability. Specifically, appellants argue that § 1–1–109 only authorizes the district court to inform the jury that, if the plaintiff is found more negligent than the defendant, the plaintiff will not recover and that the plaintiff's recovery will be reduced by the amount of his own negligence.

Appellants' argument overlooks § 1–1–114, W.S.1977, which provides in pertinent part:

"In all cases the court shall inform the jury of the consequences of its verdict."

1. Amended effective June 11, 1986.

In *Coryell v. Town of Pinedale*, Wyo., 745 P.2d 883 (1987), in response to a claim identical to that raised in the present case, we held that § 1–1–114 authorizes the court to inform the jury of the consequences of its verdict in all cases, including those in which comparative negligence is not an issue. Thus, it was not error for the district court to instruct the jury on the effect of joint and several liability.

As in *Coryell v. Town of Pinedale*, appellants also assert that the district court erred in allowing counsel for appellee to comment on the effect of joint and several liability during closing argument. It is well established in this state that, during closing argument, counsel may comment on the instructions given by the court. *Spriggs v. Cheyenne Newspapers, Inc.*, 63 Wyo. 416, 182 P.2d 801 (1947); Annot., 66 A.L.R.2d 9 (1959). Thus, absent a showing that counsel for appellee in some way misstated the law, we hold that the district court did not err in allowing him to comment on the effect of joint and several liability during his closing argument.

### III

■ Appellants' final contention is that the district court erred in denying admission of the accident report into evidence.

Following his investigation of the accident scene, Officer Val K. Clement of the Afton police department filed a report which stated in part that, due to the conditions of high snowbanks and very icy roads, no citations were issued at that time. Prior to trial, appellee filed a motion in limine to exclude

"[a]ny and all evidence, testimony, or argument concerning any matters contained in [the accident report] including, but not limited to, the accident report itself, any conclusions rendered by the Officers concerning the cause of the [accident] in question, and any reference to these Officers' decision not to render a citation * * *."

The district court apparently granted the motion to the extent that it held the report could not be introduced as evidence at trial but denied the motion to the extent that it allowed appellants to use the report to impeach or refresh the recollection of Officer Clement. There was no error in the district court's ruling.

"The fact of citation or non-citation of a driver by the investigating law enforcement officer is inadmissible in an action for negligence." *Ingrum v. Tucson Yellow Cab Co.*, 131 Ariz. 523, 642 P.2d 868, 872 (1982).

The rationale for this rule is that a citation evidences the opinion of the traffic officer as to negligence and the cause of the accident.

" 'It is not proper to permit a witness to give his opinion on questions of fact requiring no expert knowledge, when the opinion involves the very matter to be determined by the jury, and the facts on which the witness founds his opinion are capable of being presented to the jury.' " Id. 642 P.2d at 872, quoting *Billington v. Schaal*, 42 Wash.2d 878, 259 P.2d 634, 637 (1953).

This rule has been adopted by a number of courts. See *Frias v. Valle*, 101 Nev. 219, 698 P.2d 875 (1985); *Brownell v. Brown*, 114 Mich.App. 760, 319 N.W.2d 664 (1982); *Napolitan v. Happe*, 288 Pa.Super. 468, 432 A.2d 608 (1981). It is also consistent with our prior holding that

"an opinion or evaluation of the ultimate issue to be decided by the jury is inadmissible, whether it be presented in an official report or in any other fashion." *Meyer v. Kendig*, Wyo., 641 P.2d 1235, 1243 (1982).

Thus, the district court properly excluded the accident report and any testimony as to the issuance or nonissuance of a citation. Appellants thereafter were entitled to, and in fact did, use the report to present to the jury the facts upon which the officer based his opinion. On direct examination, appellants elicited the following testimony from Officer Clement:

"Q. Well, did you observe any visual obstructions at the scene of the collision?

"A. Not that I could see at the time.

"Q. Okay. Well, I'm going to direct your attention to—could you identify

that as an accurate copy of your investigation report? * * *

"A. Yes.

"Q. And could you look at all the pages to make sure that that's the complete report?

"A. It is.

   *     *     *     *     *     *

"Q. Now, do you recall observing any visual obstructions at the scene of the accident?

"A. Yes, I did.

   *     *     *     *     *     *

"Q. Now, in fact, you had observed high snowbanks at the scene of the collision, correct?

"A. Correct.

   *     *     *     *     *     *

"Q. Did you observe and experience very icy road conditions at the intersection?

"A. It had been clear that day and the roads, usually in the wintertime, get icy on the top because of the warmness and water appears and people drive over it and it gets icy, yes?

"Q. So you did observe and experience very icy conditions at the intersection, isn't that true?

"A. That's true.

"Q. And the streets appeared snow packed to you, correct?

"A. Correct.

"Q. And the streets were iced over, correct?

"A. Correct."

Thereafter, on redirect, appellants elicited the following additional testimony from the officer:

"Q. Did I understand you to say that these eight foot snow embankments constituted a visual obstruction at that particular intersection on that day?

"A. Yes."

On the basis of this testimony and the other evidence presented at trial, it was the jury's responsibility to decide whether snow conditions were a proximate cause of the accident.

Having concluded that the jury's finding is supported by substantial evidence and that the district court did not err in instructing the jury on the effects of joint and several liability or in denying admission of the accident report, we affirm.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

With the same problem and nearly the same final argument as found in *Coryell v. Town of Pinedale*, Wyo., 745 P.2d 883 (1987), I dissent from this decision. In closing argument, counsel for the Town of Afton (one of the two defendants), informed the jury:

"Okay. Let's go through another hypothetical assumption on negligence again. Let's assume he's [plaintiffs] 0% and let's assume that Hunting [the other defendant who was discharged in bankruptcy], you decide, is 99%. Let's assume that you find that the Town is 1%. What happens? Under the instructions that the Judge has given you, despite the fact that you would have found that the Town is 1% responsible, do you know what happens? He gets all of his damage, 100%, from the Town. That's the way it will work. So, really, in a sense, this number, right here, is academic unless you find that it's a 100% number, because if you find that, then you are going to have to come up with zero, zero here (indicating).

"So that's the importance. If there's 1% negligence, the Town pays for everything. If it's 30% negligence on the part of Mr. Harmon, in this first scenario, and the Town is 31, they pay it all, less the 30% that you had determined was his negligence."

The difference from Coryell is the clear and adequate objection made. In jury-instruction conference, objection to the joint-and-several-liability instruction was asserted.

"THE COURT: Okay. Let me just take 12.

"Now, I don't understand your objection with respect to 12. This is a concurrent cause instruction.

"MS. ROSE: Right, but it states when the concurring negligence of two or more persons causes an injury, each person is wholly liable to the plaintiff regardless of the relative degree to which each contributes to the injury.

"THE COURT: Well, that's the correct statement of the law—

"MR. JACOBSON: It is.

"THE COURT: —as it now exists.

"MR. JACOBSON: And you will recall our motion in limine. We didn't feel that reference to the collection aspects of joint and several liability is relevant to the Jury's deliberations. We understand you've overruled that but you mentioned it again in another instruction and that is—

"MS. ROSE: 16.

"MR. JACOBSON: Now, we can live with 12, but we don't think it needs to be mentioned again in 16, both of those. And that's the last sentence."

By earlier motion in limine, plaintiffs had requested an order constraining "any reference to the legal effects of joint and several liability on the Defendant" and that the court "admonish counsel for the Defendant not to suggest to the jury by statement, argument, objection, or otherwise that the Plaintiffs have sought exclusion from proof of any fact or matter set forth herein." Comprehensive memorandum in support of the motion in limine relating to the joint-and-several-liability issue was also filed pretrial. In particular, plaintiffs raised the issue of evidence or argument relating to the source of funds to pay the award, concluding, "Accordingly, Plaintiff submits an Order in Limine limiting any reference to the collection aspects of joint and several liability would be appropriate." Responsive to plaintiffs' motion in limine, defendant filed a motion in limine including "[a]ny and all evidence, testimony, or argument concerning the issue of the existence of liability insurance in any of the parties hereto," citing Rule 411, W.R.E.

In their motion for judgment N.O.V., or in the alternative for a new trial, plaintiffs again raised the issue:

"(3) The Court erroneously allowed the Defendant to talk to the jury about the prejudicial 'collection' aspects of the doctrine of joint and several liability;
* * * "

In responsive argument in the post-trial motion brief, defendant Town of Afton stated:

"THE COURT DID NOT ERRONEOUSLY ALLOW DEFENDANT TO TELL THE JURY ABOUT THE 'COLLECTION ASPECTS' OF THE DOCTRINE OF JOINT AND SEVERAL LIABILITY.

"The Town concedes that at closing argument, Counsel argued to the jury the consequences of the doctrine of 'joint and several liability.' The Town disagrees with Plaintiffs that the Court erroneously allowed counsel to do so. Prior to trial of this matter, counsel for the Defendant, by way of an offered Jury Instruction, presented authority in support of its position that the jury be instructed on the consequences of the doctrine of joint and several liability. Following argument, the Court ruled in favor of Defendant on this issue and the Defendant will rely on the authority previously submitted to the Court in support of its position that said ruling was correct.

"At closing argument, counsel for the Defendant informed the jury of the possible effect of its Verdict under the doctrine of joint and several liability. Said argument was presented to the jury *without objection* by counsel for the Plaintiffs.

"Plaintiffs now seek a Judgment Notwithstanding the Verdict or a New Trial premised on the claim that the Defendant should not have informed the jury about the 'collection aspects' of their verdict. Nonetheless, during the course of trial, counsel for Plaintiffs themselves repeatedly informed the jury of the bankruptcy of Julia Hunting and their inability to join Julia Hunting as a Defendant or to 'collect' a verdict against her.

"By allowing the Defendant to argue joint and several liability in closing without objection, and by their own actions in apprising the jury of the bankruptcy of Julia Hunting, and therefore their own 'collection' problems, Plaintiffs waived their right to argue that the Court erroneously allowed the Defendant to argue joint and several liability, even *assuming* that their legal position is correct."

Responsively, plaintiffs stated:

"Plaintiffs rely on prior arguments. Plaintiffs' objection to this was clearly not waived as it was raised in their pretrial Motion in Limine, and ruled on adversely by the Court. Where such a motion is denied and the losing party is not advised to reassert his objection at trial, the objection is deemed preserved throughout trial without the necessity of making it repeatedly in front of the jury. Cf. *Gammon v. Clark Equipment Co.,* 38 Wash.App. 274, 686 P.2d 1102 (1984). "Defendant opened the door for admission of otherwise inadmissible evidence of Julie Huntings bankruptcy, with Mr. Sundahl's very first question to her on cross-examination. Accordingly Plaintiff's later reference to this fact was proper. Such comments did not in turn open the door, as Defendant suggests for Defendant's prejudicial argument to the jury in closing as to the effect of joint and several liability on the Town.

"Defendant also suggests that the argument as to joint and several liability had no effect on the jury because they did not reach the issue of damages. Plaintiff contends that the very reason the jury did not get to the issue of damages was because of the prejudicial effect of being informed that even if you find just 1% of proximately caused negligence on the Town it will be wholly liable. The jury obviously felt that even if the Town was negligent it should not be required to pay for Julie Huntings' negligence in addition to its own and that the *only* way to avoid that result was to make a finding of no proximate cause on the Town's part, or to find no damages whatsoever, which clearly would have been against the weight of the evidence. The court-

room was not a proper place however, for dissatisfaction with the law of joint and several liability."

We are faced with the universal principle that the jury should not consider the relative wealth of the plaintiffs and defendant in arriving at its verdict. *Edwards v. Harris,* Wyo., 397 P.2d 87 (1964); *Tryon v. Naegle,* 20 Ariz.App. 138, 510 P.2d 768 (1973); *Hoffman v. Brandt,* 65 Cal.2d 549, 55 Cal.Rptr. 417, 421 P.2d 425 (1966). Nor should the Town by a constituency of its electorate determine liability based on potential obligation to pay when, in fact, that is not true with insurance.

Contrary to *Miller v. Lander,* Wyo., 453 P.2d 889 (1969); *Barber v. State Highway Commission,* 80 Wyo. 340, 342 P.2d 723 (1959); and Annot., 93 A.L.R.3d 556, I would find that if you are going to argue attribution of payment obligation to a litigant, the availability of funds for payment should also be fair game for responsive argument.

In the wisdom of the nature of the law, it is provident to understand that everything known may not necessarily be told to the jury. It is, however, not equally justified for something to be related that is only half true or in essence actually untrue. See *Coryell v. Town of Pinedale,* supra.

My posture in these cases is that if information is to be provided for the jury, it should be available by instruction and defined by argument as directed to "tell the truth." In adopting this posture, I do not disregard the logic and validation of Justice Rose in the original *Burton v. Fisher Controls Company,* Wyo., 713 P.2d 1137 (1986) opinion wherein he developed the concern that erroneous and misleading information as to the consequence of the jury's verdict was created in the instructions which "misinformed the jury as to the consequences of its verdict." Id. at 1145. This posture was not rejected by Justice Brown in dissent, wherein he ascertained necessity of a proper instruction which would avoid "a false impression with the jury as to who the parties were and the effect of any potential verdict." Id. at 1150. Specifical-

ly relating to the philosophic content of these two comments in *Burton v. Fisher Controls Company*, Wyo., 723 P.2d 1214, 1222 fn. 6 (1986), reversing the first case, the court further analyzed:

> "An academic inquiry for future cases is created as to whether the more appropriate arrangement would be to classify by actor and designate by given name or somehow otherwise clarify in the early part of the jury verdict as to who is only an actor and who is an actual defendant. In view of present statutory requirements that the jury be advised of the effect of their verdict, and the forthcoming provision of § 1–1–109(b)(i), W.S. 1977, 'Inform the jury of the consequences of its determination of the [percentage] of fault,' it would seem that either through the verdict form or the statement of the issues the jury should be advised as to who among the actors had 'available pockets' and who was included only for determination of the computation of responsibility."

I have not changed my opinion from that discussion in contending that if you are going to talk about who bears the responsibility for *payment*, the issue is open to all litigants and should be *accurately presented* if invoked by instruction. If we are going to define litigative parameters by responsibility for payment, then we should accurately communicate to the factfinder where that burden will be rested.[1]

This subject is not unrelated to the comparable cases of litigant appeal to jurors as taxpayers. *City of Columbia v. Myers*, 278 S.C. 288, 294 S.E.2d 787 (1982); *Byrns v. St. Louis County*, Minn., 295 N.W.2d 517 (1980); *Massoni v. State Highway Commission*, 214 Kan. 844, 522 P.2d 973 (1974), overruled on other grounds, sub nom. *Lollis v. Superior Sales Co., Inc.*, 580 P.2d 423 (1978); Annot., 33 A.L.R.2d 459; and Annot., 93 A.L.R.3d 556, involving taxpayer interest of jurors as a defense technique and also as uniformly condemned by appellate cases. No case was cited by either party here, and none found by this writer where anything similar to Coryell or this case invoking obvious argument to prejudice was ever appealed, let alone affirmed. A most appropriate case is *Lufkin v. City of Bakersfield*, 131 Cal.App. 21, 20 P.2d 788 (1933), where defendant appealed on the basis of plaintiff's jury argument that the city was insured after defendant had initiated the subject by closing argument:

> " * * * [T]hat if the jury brought in a verdict for the plaintiff in this case, it would lead to other damage actions against the city and the taking of taxpayers' funds and turning them over to other people." Id. 20 P.2d at 791.

Although not approving of the conduct of either litigant, the appellate court denied reversible error.

The standard of full and accurate advice is not unnoticed in Wyoming law where in an early comparative-negligence case it was said:

> " * * * If the jury is to be informed of the effect of its verdict, it ought to be correctly informed to the fullest extent." *Woodward v. Haney*, Wyo., 564 P.2d 844, 847, fn. 4 (1977).

By complete agreement with that thoughtful ordinance, I reject the prejudicial infusion in final argument, and would reverse and remand for a new trial.

---

1. It is stated in Annot., 93 A.L.R.3d 556, 560: "Attorneys well schooled and careful in making prompt and clearly stated objections to improperly offered evidence, and in saving exceptions to adverse rulings, possibly may be inclined not to observe the same degree of meticulous care upon hearing improper arguments by opposing counsel. Thus, although many appellate courts, in the interest of exercising every degree of possible fairness to the actual parties in the case, often may demand less than technical perfection in the preservation of the right to contend on appeal that a prejudicial argument was made in the trial court appealing to the jurors' self-interest or prejudice as taxpayers, counsel should make every effort to observe the letter of applicable rules. Of course, a complete failure to raise proper objection may well be fatal, as may the failure to insist upon a definitive ruling."